JERRY<br>v.<br>THE STATE.

---

## JERRY v. THE STATE.

The circumstance of the record's stating the coming of the jury in the past tense, cannot be assigned for error; the finding of the jury, and the direct acts of the Court, being set out in the present tense.

It is sufficient to describe the grand jurors, in the indictment, as "good and lawful men;" those words including every qualification required by law.

The statement in the indictment of its having been found on the "oaths" of the grand jurors, instead of on their "oath," is no ground of error.

An indictment for murder may be good, without stating the accused to be a

Nov. Term,
1825.

JERRY
v.
THE STATE.

Saturday,
November 19.

person of sound memory and discretion; and, though the killing must be shown to be unlawful, the word "unlawful" itself need not be used.

If there be a verdict of guilty in a capital case, and the Court have strong doubts whether the testimony supports the verdict, a motion for a new trial should be sustained.

ERROR to the *Clark* Circuit Court.

HOLMAN, J.—*Jerry*, a man of colour, was indicted for murder in the *Clark* Circuit Court; and on the plea of not guilty was convicted; and sentence of death was pronounced against him. He prosecutes his writ of error to reverse the judgment.

The assignment of errors presents several exceptions to the formality of the record, in stating some events, as the coming of the jury, &c. in the past instead of the present tense; but it may be remarked, that the finding of the jury and the direct acts of the Court are in the present tense; and that the informalities complained of are of a very unimportant character. The objections, that the grand jurors are not said to be householders, and that the indictment was found on the oaths of the grand jurors, are of the same nature. The grand jurors were "good and lawful men," which is all the law requires, and must be presumed to include every statutory as well as common law qualification. The grand jurors all took the same oath, and the plural term could alone have been used by an unclerical reference to their being severally sworn. Some objection has been made to the manner of describing the offence in the indictment, as to time and place, but we think without foundation. It is not stated in the indictment that the accused was a person of sound memory and discretion, nor that the killing was unlawful. The statutory and the common law description of murder, in these particulars, is the same; and what is presumed at common law, as to the sanity and discretion of the perpetrator of the act, may in the same manner be presumed under the statute. And the indictment must set forth an unlawful killing or it will be defective. If it does describe the manner of the killing, so as to show clearly that it was unlawful, the insertion of the word unlawful is unnecessary; and if it does not so describe the killing, the word unlawful would not aid the description. So that we are of opinion the indictment is sufficient.

After the finding of the verdict, the prisoner by his counsel moved the Court for a new trial, on the ground that the verdict was contrary to evidence. The Court overruled the motion;

whereupon a bill of exceptions was taken, which sets forth the evidence as follows, to wit:—

"That, on or about the day mentioned in the said indictment, the deceased, *Joseph Gibson*, was at his residence at *M'Donald's* ferry, in the county of *Clark* and state of *Indiana*, and the defendant was at the time living with the deceased in the capacity of a servant, having placed himself under the protection of said deceased, but without wages. That before, on the same day of giving the blow mentioned in the indictment, the defendant, after giving the wife of the deceased some insolent language, and being reprimanded by the deceased, took up an axe and swore that if he the deceased did not let him alone he would knock his brains out: the deceased then took the axe from the defendant, and chastised him pretty severely with a cane or walking stick. It was testified, that the defendant appeared sullen and dissatisfied before the beating, and when asked by the wife of the deceased what was the matter, he replied that he had cut his foot with a d—d rock. After the beating was over, the deceased went in the house to eat his dinner: when the family were done, the deceased requested defendant to come in and eat his dinner, which he refused: he was requested the second time to eat or go to his work, which he also refused: then the deceased kicked his feet from under him so that he fell on his back partly in the door. The defendant then stated that he would go to town, and asked some member of the family for a quarter of a dollar which he alleged they had in keeping. The defendant, after receiving the money, went out through the gate of the yard into the road leading to town: the deceased asked the defendant where he was going, who replied he was going to town: the deceased replied that he would see whether he would or not, and immediately pursued the defendant in a walk: when the deceased came within five or six yards of defendant, the defendant stooped down and took up a large stone weighing five or six pounds and turned round facing the deceased, advanced a step or two swearing that he would kill deceased if he did not let him alone, and threw the stone at the same instant. As he raised the stone, the deceased retreated a few steps and was in the act of returning, when defendant threw the stone and knocked him down: the defendant attempted to repeat his blow but was prevented by the by-standers. The defendant when pursued by the by-standers, after he had knocked down the deceased,

threatened to kill them if they touched him. It was further proved, that the defendant was not 21 years of age when the aforesaid transaction took place. It was further testified, that the contusion was of the description mentioned in the indictment, and such as was calculated to produce death; and that, in the opinion of the witnesses, the death was occasioned by the blow or wound as set forth in the indictment. It was further proved, that the defendant had been raised by *Peter Smith* who was then dead, and whose widow the deceased had married. That the said *Smith* in his life-time claimed the service of the defendant, by virtue of indentures upon the mother of the defendant, under the territorial government of *Indiana;* and had been in the habit of hiring out the defendant and receiving the profits of his labour. It was further proved, that the wife of the deceased, (who was the widow of *Peter Smith,*) had exercised the same authority which had occasionally been exerted before and after the marriage of the deceased with the widow of the said *Smith.* The deceased had claimed the same right. It was further proved, that the defendant was born in the *Indiana* territory long after the ordinance of 1787, (to. wit; in 1806 or 1807,) respecting the government of the said territory north and west of the *Ohio* river. It was further testified, that about the time of the marriage of the deceased with the widow of the said *Smith,* and twice afterwards, the defendant had threatened to kill the deceased; but the declaration always originated from the suggestions of others to the defendant, touching the power of the deceased over the defendant in consequence of the marriage aforesaid, between the deceased and the widow of *Peter Smith,* who had claimed the right to the services of the defendant as above stated; and the threats were always accompanied with the condition of an attempt being made by the deceased to meddle with him. It was further proved, that the defendant wept very much in consequence of the chastisement inflicted by the deceased. The above and foregoing was the substance of the testimony offered upon the issue of not guilty aforesaid."

Taking this testimony in its utmost latitude, and giving every fair inference in favour of the verdict and judgment, we are compelled to say, that strong doubts must remain whether the testimony supports the verdict; and in a case of so much doubt a new trial ought to be granted.

*Per Curiam.*—The judgment is reversed, and the verdict set aside.  Cause remanded, &c.

Nov. Term,
**1825.**

> *Caswell* and *Nelson*, for the plaintiff.
> *Smith*, for the state.

