## Case No. 15,510.

### UNITED STATES v. KEEN.

[1 McLean, 429.] [1]

Circuit Court, D. Indiana. May Term, 1839.

FEDERAL COURTS—POWER TO GRANT NEW TRIALS —INDICTMENT—VARIANCE—EVIDENCE—PROOF OF BANK NOTES — AMENDMENT OF VERDICT — JUDICIAL NOTICE.

1. The courts of the United States have power to grant new trials in criminal cases as well in those cases that are capital as in others.
   [Cited in U. S. v. Conner, Case No. 14,847; Sparf v. U. S., 15 Sup. Ct. 321.]
   [Cited in brief in Bell v. State, 48 Ala. 684. Cited in Bohanan v. State, 18 Neb. 77, 24 N. W. 399; Joy v. State, 14 Ind. 153; People v Cignarale, 110 N. Y. 31, 17 N. E. 135; People v. Dowling, 84 N. Y. 483; People v. Schmidt, 64 Cal. 262, 30 Pac. 815.]

2. There is no constitutional inhibition to the exercise of this power.

3. An instrument may be set out in an indictment according to its legal effect.

4. But if words are used as descriptive of the instrument, though they might have been omitted, yet being stated, must be proved.
   [Cited in brief in Com. v. Dale (Mass.) 11 N. E. 536; Com. v. Perry, Id. 538.]

5. A draft signed Jos. Johnson not admissible under a count stating it to be signed Joseph Johnson, president.

6. Bank notes alleged to be inclosed in a letter stolen from the mail, need not be proved by a person who has seen the president and cashier write.

7. Any one who deals in such notes, as cashiers of banks, &c. may prove their genuineness.

8. The proof of a check drawn on the Bank of the United States and circulated as money, comes under the same rule.

9. Where the jury have omitted to find on one of the counts, the court may permit such count to be discontinued.
   [Cited in U. S. v. Peterson, Case No. 16,037; U. S. v. O'Fallon, Id. 15,911.]
   [Cited in Sargent v. State, 11 Ohio, 474; State v Phinney, 42 Me. 387.]

10. In such a case the verdict cannot be amended, as in a case of special verdict, so as to enter not guilty on such count.
    [Cited in Wilson v. State, 20 Ohio, 30.]

11. The court judicially know that the offence charged in the different counts, is the same, varied so as to meet the proof.

12. And a conviction on any one of the counts, will be a bar to any future prosecution for the same offence.
    [Cited in Ex parte Bradley, 48 Ind. 553; Weinzorpflin v. State, 7 Blackf. 192.]

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

13. In such a case the number of counts, the offence being the same, does not increase or lessen the punishment.

[This was an indictment against William C. Keen upon the charge of robbing the mail. On motion for a new trial.]

Stevens & Eggleston, for the United States.

Cushing, Dumont & Switser, for defendant.

OPINION OF THE COURT. At the last term of this court, the defendant having been previously indicted for stealing a letter, which contained a bank note and a draft, from the mail, he being post master, was tried and found guilty by the jury, of the second, third, fourth and fifth counts in the indictment, but there was no finding on the first count. [Case unreported.] And a motion having been made for a new trial and to set aside the verdict, for irregularity, at the last term, it was continued for argument to the present term.

The first count in the indictment charges the defendant with stealing from the mail a certain letter which "contained two certain bank notes of great value, to wit: of the value of twenty-five dollars; one of which said bank notes was on the Bank of the United States for the sum of twenty dollars, payable at the office of discount and deposit in Charleston, bearing date the second day of November, eighteen hundred and thirty-four, signed by Joseph Johnson, president, and numbered in figures 1689, payable to A. G. Rose or order, and marked with the letter D; and the other said bank note was on the Lumberman's Bank of Pennsylvania, at Warren, for the sum of five dollars, &c." The second count charges that the letter contained "one certain bank note of great value, to wit, of the value of five dollars, which said bank note was on the Lumberman's Bank of Pennsylvania, at Warren, for the sum of five dollars, &c.," "and that the letter also contained a draft drawn by Joseph Johnson on the cashier of the Bank of the United States, of great value, to wit, of the value of twenty dollars, &c." The third count alleged the letter contained the five dollar note as above described; and also a draft on the Bank of the United States for the payment of money, to wit, "for the sum of twenty dollars, &c." In the fourth count the letter is stated to have contained the above described five dollars; and also a draft drawn by Joseph Johnson on the cashier of the Bank of the United States of great value, to wit, "of the value of twenty dollars, &c." And in the fifth count the letter is alleged to have contained the above five dollar note and also a draft on the Bank of the United States for the payment of money, to wit, "for the amount of twenty dollars, &c." The draft given in evidence was signed by Jos. Johnson, president, &c. and drawn on the cashier of the Bank of the United States for twenty dollars.

The counsel for the defendant rest their motion for a new trial principally on two grounds: (1) The variance between the draft described in the indictment, and that which was given in evidence. (2) That the draft was not proved to be genuine. And they insist that the verdict must be set aside, as it finds the defendant guilty of four of the five counts in the indictment, omitting the first count, as to which there is no verdict. This case has been elaborately and ably argued, and its importance claims the deliberate consideration of the court.

Before the grounds taken by the defendant's counsel are examined, it may not be improper to notice an objection made by the district attorney, as to the power of the court to grant a new trial in this case. This objection is founded on the fifth article of amendments to the constitution of the United States, which declares that "no person shall be subject, for the same offence, to be twice put in jeopardy of life or limb." It may be remarked that the offence charged in the indictment, though infamous and severely punishable, does not subject the defendant to the loss of life or limb. But it is contended that if this clause in the constitution inhibits the exercise of the power by the court to grant a new trial in a capital case, the same rule should apply in cases of less criminality. That if a new trial in a case punishable with death, put the defendant in jeopardy a second time within the meaning of the constitution, it may well be doubted whether the court should grant a new trial in misdemeanors or felonies which are not punished capitally. The authority referred to in the case of U. S. v. Gibert [Case No. 15,204] is entitled to very great respect. The very learned and eminent judge who presided on that occasion, gave an elaborate and able opinion, that the above article prohibited the court from granting a new trial in a capital case. The principle involved in that decision is of great importance, and if it were likely to be brought before the supreme court, we should decline giving any intimation of an opinion on the subject. But as the question has been argued, although it is not necessary to the decision of the motion before us, we will concisely state our views in regard to it. In England it seems to be settled that in case of felony or treason, no new trial can be granted; but if the conviction appear to the judge to be improper, he may respite the execution, to enable the defendant to apply for a pardon. 1 Chit. Cr. Law, 532; 6 Term R. 625, 638; 13 East, 416, note c; 4 Bl. Comm. 375, 376. But in all cases of misdemeanor after a conviction, new trials may be granted. In 4 Bl. Comm. 335, it is laid down as a "universal maxim of the common law of England, that no man is to be brought in jeopardy of his life more than once for the same offence." The author is treating of the plea of autre fois acquit, or a former acquittal; and the same principle

applies on the plea of autre fois convict, or a former conviction. And there can be no doubt that these pleas, as stated in 2 Hawk. P. C. c. 35, § 1, are founded on the maxim, that no man can be tried twice for the same offence. Some contrariety of opinion seems to have been entertained, whether the verdict of the jury without the judgment of the court would sustain these pleas. Mr. Chitty, in Chit. Cr. Law, 372, says: "As to the sufficiency of the discharge which may be thus pleaded, it must be a legal acquittal by judgment upon trial, either by verdict of a petty jury or by battle." "If the special verdict be found by the petit jury and judgment be given by the court, 'that he go thereof without day,' this will amount to a sufficient acquittal." And Mr. Justice Washington, in the case of U. S. v. Haskell [Case No. 15,-321], considered the judgment of the court necessary to a conviction. The same rule is laid down in 2 Hale, P. C. 243, 246, and in Burn, J. P. "Indictment," 11.

It would seem to be clear, if the judgment of the court be necessary to an acquittal, it must be equally necessary in a conviction. Mr. Justice Blackstone, in his Commentaries (volume 4, p. 336), says: "The plea of autre fois convict, or a former conviction of the same identical crime, though no judgment was ever given, or perhaps ever will be, is a good plea in bar to an indictment. And that the verdict of acquittal without judgment of the court, is also a bar." But this general remark must be subject to some qualification. If the court have not jurisdiction or the indictment be defective, the defendant though acquitted or found guilty by the jury, may be again tried for the same offence. That the maxim of the common law which secures an individual against being placed in jeopardy a second time for the same offence, is the foundation of these pleas, is readily admitted; but it is not equally obvious that in cases of felony, new trials have been refused, in England, on the same ground. The maxim was so strongly recommended by the principles of justice that no intelligent people could resist it. It was favorable to life and liberty, and was adopted as a protection to the subject. But if it operated to prevent new trials in capital cases from being granted, it is singular that in some case it has not been adverted to as having this effect. The note of East, in his volume 13, p. 416, states: "In capital cases at the assizes, if a conviction take place on insufficient evidence, the common course is to apply to the crown for a pardon &c.; but I am not aware of a new trial being granted in any instance in a capital case: and upon the debate of all the judges in Tinckler's Case [1 East, P. C. 354], in 1781, it seemed to be considered that it could not be." And there are numerous authorities which show that an inferior jurisdiction cannot grant a new trial on the merits, but only for an irregularity.

Now the rule not to grant new trials in capital cases may have been recommended by a policy to invoke the royal clemency, rather than to give a second trial, where the evidence did not warrant the conviction. This would seem to be a more reasonable supposition, in the absence of facts, than that the rule, which operates against the life of the subject, should be founded on a maxim intended for his protection. The constitution has adopted substantially this maxim of the common law. And it is argued that, with the maxim, its settled construction was also adopted. If this were admitted, it would still be necessary to show that the maxim had been so construed as to prohibit a new trial in a capital case. A construction of the maxim drawn from inference, and which, at least, must be somewhat doubtful, can afford but little aid to a correct understanding of the constitution.

It was formerly held in England that in a capital case the jury could not be discharged; and if discharged the defendant could not be again tried. 3 Inst. 110; Fost. Crown Law, 28. But this law has been relaxed, and it is now settled, both here and in England, that in case of absolute necessity, even in a capital trial, a jury may be discharged and another empannelled to try the defendant. 1 Chit. Cr. Law, 629; 2 Leach, 620; 4 Taunt. 309; 3 Camp. 207; 6 Serg. & R. 577; 18 Johns. 187; [U. S. v. Perez] 9 Wheat. [22 U. S.] 579. Where the court had no jurisdiction, the indictment was defective, or there was a mistrial, courts always exercised the power to discharge the jury, or set aside the verdict; and this was considered no bar to a second trial. But under no other circumstances in capital cases, it is insisted, can a verdict of guilty be set aside and a new trial granted; as another trial would put the defendant in jeopardy a second time for the same offence. Except in the case of U. S. v. Gibert [Case No. 15,204], this position is not sustained; and there are several decisions to the contrary. No case is cited where the verdict of guilty having been set aside, on motion of the defendant, it has been held to bar another trial. The position is not contested but fully admitted, that where the court have jurisdiction, the indictment being good and a legal jury empannelled, the defendant has a right to claim a verdict; and if the jury be discharged unnecessarily, he must stand acquitted. But still this does not meet the question under consideration.

The question is whether on motion of the defendant, the verdict of guilty may not be set aside and a new trial awarded. In 1 Chit. Cr. Law, 630, it is laid down that, in order to let the prisoner into a ground of defence which he could not otherwise have taken, by his consent the jury may be discharged, and that this does not bar another trial. Fost. Crown Law, 31. But, says Mr. Chitty, it does not seem without such consent, the prosecutor has any right to bring

the defendant twice into peril of his life. Fost. Crown Law, 31; 2 Strange, 984; Com. Dig. "Indictment," M. And in Hawk. P. C. bk. 2, c. 47, § 1, it is said "that it seems to have been anciently an uncontroverted rule, and hath been allowed, even by those of a contrary opinion, to have been the general tradition of the law, that a jury sworn and charged in a capital case cannot be discharged, without the prisoner's consent, till they have given a verdict. And notwithstanding some authorities to the contrary in the reign of Charles II., this hath been holden for clear law since the revolution." And again in section 22, of the same chapter: "However, it is settled, that the court cannot set aside a verdict which acquits a defendant of a prosecution properly criminal, as it seems they may a verdict that convicts him, for having been given contrary to evidence, and the directions of the judge." Coke, 14; 1 Keb. 546; 2 Hale, P. C. 310; 4 Bl. Comm. 354. If the jury be discharged, without the consent of the prisoner, in a case where they can be legally discharged only with his consent, he cannot again be put upon his trial. It is presumed this will not be controverted. And if it be admitted it shows that the assent of the prisoner to a proceeding designed for his benefit, takes from him the right, as it manifestly should do, of setting up such proceeding in bar of another trial. If he was in jeopardy by the first verdict, by his consent that verdict is set aside and annulled; and for every legal objection the verdict and the proceedings which led to it, are as though they never had been.

If there be a right in the court to grant a new trial in a capital case, it is insisted, the same power may set aside a verdict of acquittal and order a new trial. This does not, by any means follow. In the first place the new trial is granted, at the instance of the prisoner and for his benefit. It may be admitted that the new trial could only be granted with the assent of the prisoner. But a new trial after a verdict of acquittal, in a capital case, would be against the consent and the life of the prisoner. This would not only violate the humane policy of the law in criminal cases, but it would be against its settled principles. In the language of Hawkins, above cited, "it is settled that the court cannot set aside a verdict which acquits the defendant." In cases of misdemeanor, it is admitted that both in this country and in England new trials may be granted. And is there any instance since the days of Charles the Second where a verdict of acquittal has been set aside and granted on the merits. If this rule be so general, in this country, as to admit of no single exception, where is the danger of exercising the same power by the court in cases punished capitally. It surely does not follow that if the court may grant a new trial, in a capital case, with the assent and

on motion of the prisoner, on a verdict of guilty, that they may do the same thing on a verdict of acquittal, and against the consent and remonstrance of the defendant. And yet, if I understand the argument, it amounts to this and nothing more.

In the case of U. S. v. Fries [Case No. 15,170], the court asserted the power to grant a new trial in a capital case. And this has been done generally in the state courts. 17 Mass. 515; 1 Leigh, 598; 1 Blackf. 395. In Kentucky new trials are often granted in capital cases. They are not reported, as such trials take place in the circuit court, and the right in the court to set aside a verdict of guilty, seems never to have been doubted. And indeed this may be said of Ohio. In the case of People v. Comstock, 8 Wend. 549, the court decided that where the jury had acquitted the defendant, there could be no new trial. This is in conformity with the decisions in England, and also in this country. And in their opinion the court refer to some of the decisions above cited, which show that a new trial cannot be granted in England, on a conviction for felony. In 5 Cow. 39, the court decided that the court of oyer and terminer had power in a criminal case to grant a new trial. The question was, whether, it being an inferior court, it could give a new trial, except for some irregularity. And the court refer to the rule in England, not to grant new trials in cases of felony. They say: "The policy in respect to new trials in criminal cases which the English courts have pursued has never been countenanced by our courts, and would never be tolerated by our people." From this the supreme court of New York seem to think the rule in England, as to new trials, is founded on policy.

The provision in the constitution that "no person shall be subject, for the same offence, to be twice put in jeopardy of life or limb," was designed, as the language clearly imports, for the security of the citizen. It was intended to shield him against oppression and injustice. In the case of People v. Goodwin, 18 Johns. 187, the court inclined to think that this provision was obligatory on the state courts. We think otherwise. It applies to the federal courts, and to the federal courts only. The federal constitution organized a new government, distinct from the state governments; vesting the former with certain powers and imposing certain restrictions on the latter. From this it is clear that the general provisions in the federal constitution can apply only to the government of the Union. Where, in the constitution, restrictions are imposed on the states, or a principle is adopted which is intended to operate upon them, the language is specific.

On general principles, it would seem if the court in the exercise of their judgment, may set aside a verdict, where the indictment is

defective or a mis-trial is had, they may, on the same principle, set aside the verdict of guilty where the evidence is insufficient to convict. It is laid down in all the authorities, that if the court have not jurisdiction, the indictment be defective, or the jury have not been legally summoned, the defendant, though tried, cannot be considered as having been in jeopardy; and why should he be considered as having been in jeopardy, where the verdict is set aside for the insufficiency of the evidence.

The jury judge of the facts and apply to them the law as laid down by the court; and if they, in their verdict of guilty pervert the facts and misapply the law, why should not their verdict be set aside. This may be done, it is admitted, when the offence is not punished capitally, but why may it not be done in capital cases. One would suppose that the severity of the punishment, instead of abridging the rights of the prisoner should rather enlarge them. The court must sanction the finding of the jury by passing sentence of death on the prisoner; and how can they do this when they conscientiously know that neither the facts nor the law warrant his conviction. In favor of life, presumptions arise which seem to relax, and in fact do sometimes relax the rigor of the law. But in the construction of the constitution contended for, this maxim is reversed. The prisoner is found guilty by the jury, and, whether right or wrong he must stand convicted. He claims, under the constitution, a fair and an impartial trial, and he shows gross prejudices against him by the jury, who have convicted him on testimony wholly insufficient; but he is answered that the constitution protects him from being put in jeopardy a second time for the same offence, and that a new trial would violate this provision. In other words, the constitution guarantees to him the right of being hung, to protect him from the danger of a second trial. Whatever may be said theoretically of this constitutional protection, practically, the subject of it can have no very strong reason to appreciate it.

Conceiving as we do that the constitution interposes no objection to the exercise of the power of the court to grant a new trial in a capital case, the reason deduced from the rule asserted, must fall with the rule itself. And we will now examine the points on which the motion for a new trial is founded. And first as to the variance between the draft and the indictment. This is not an indictment for the forgery of this draft. The draft is rather an incident which enhances the punishment, than the foundation of the prosecution. The felonious abstraction of the letter is the principal offence; though to sustain the indictment the draft must be proved as well as the letter. And the question here arises whether this draft was admissible under the indictment. In the third and fifth counts this instrument is described as a draft on the Bank of the United States for the payment of money, to wit, "for the sum of twenty dollars." Is this a sufficient description of the draft. We think it is, and if the draft given in evidence substantially answered this description, we think it was rightfully admitted to go to the jury.

But it is objected that the draft was drawn on the cashier of the Bank of the United States, and not as alleged in these counts, on the Bank of the United States. The court do not perceive the force of this objection. A corporation must act through its officers; it can act in no other manner. The cashier of a bank is its agent, and when a draft is drawn, on the cashier of a bank, in effect as well as in terms, it is drawn on the bank. In the third and fifth counts the draft is not set forth according to its tenor, but according to its effect; and we think it was clearly admissible in evidence, under the above counts. And here the court might rest this part of the case. If the jury have applied the draft to the second and fourth counts, improperly, can such application prejudice the defendant. Is his punishment increased, by a conviction on these counts. The court see and know that the offence charged in the four counts, on which the jury have found, is the same, but varied to meet the proof. There can be but one punishment, and that is neither enhanced nor lessened by the number of counts on which the defendant is found guilty. I confess I entertain strong doubts whether the draft is admissible under the second and fourth counts in the indictment. In these counts it is alleged to have been drawn by Joseph Johnson, and the draft given in evidence was signed by Jos. Johnson, president. It was unnecessary to allege by whom the draft was drawn, as the court have already stated, but having made the allegation, it cannot be disregarded.

It is ingeniously argued that the indictment does not state the name of Joseph Johnson, by way of description, but as a fact, and that under this averment, the proof of the fact that Joseph Johnson did sign the draft is admissible. That the draft is set out according to its legal effect, which effect is shown by proving that Jos. Johnson is the same as Joseph Johnson. How is this rule to be limited If there be no other limitation than proof of the fact, the prosecution may aver the draft was signed by David Johnson, and sustain the averment by giving a draft in evidence signed by Joseph Johnson, accompanied with proof, that it was in fact, signed by David Johnson. This will hardly be contended, and yet if the rule exist, how can it stop short of this. Jos. may mean Joseph, Josephus, Joshua or some other Christian name. There is, at least, some degree of uncertainty as to the name, and this must be explained by the evidence. And this evidence is to be

heard under the averment of the fact that the draft was signed by Joseph Johnson—not that Joseph Johnson signed it by the name of Jos. Johnson. This latter allegation would have avoided any variance. Would this variance have been fatal in a civil action on the draft. In Chit. Pl. 307, it is laid down: "If a contract be described according to its legal effect, it will, in general be sufficient, though it may vary from the precise words of the contract; but a variance, however small in setting out the name, &c., in a bill or note is fatal: and therefore where a note given by the name of Shirtliff and others, was described in the declaration as made by Shutliff and others, the plaintiff was non-suited." In the third and fifth counts this draft is described according to its legal effect. It is represented to be a draft on the Bank of the United States, for the payment of money, to wit, the sum of twenty dollars. But, how is the legal effect of a name to be given. The rule is sensible and of daily application to instruments, but can it apply to names. What is meant by the legal effect of a name. The draft is alleged to have been drawn by Joseph Johnson; but on its face Jos. Johnson appears to be the drawer. Now it is admitted that if the draft had been thus set out by way of description, the variance would be fatal. But can the name be used for any other purpose than that of description,—a description of the person of the drawer. The legal effect of an instrument may be stated without using the words found upon the face of the instrument. But can a name be so stated. Some abbreviations in words, which do not change their import and cannot mislead, may be admitted. But where any uncertainty arises in a name or a word, which is material, that uncertainty must be rendered certain by suitable averments. These lay the foundation for the proof, and give notice to the party interested. I am inclined to think that the draft was not so set out in the second and fourth counts as to make it admissible as evidence. But as before remarked, a verdict of guilty on these counts, does not prejudice the defendant, and cannot afford any ground for a new trial.

We come now to consider the second reason for a new trial, that the draft was not proved to be genuine. It is admitted that some two or three of the witnesses, who were acquainted with this description of paper, considered the draft as genuine, and of the value which it purported to be upon its face. But it seems they had never seen Johnson write, nor had they corresponded with him. And it is insisted, therefore, that they were not competent to prove the genuineness of the draft. Bank notes which circulate as money may be proved to be genuine, by persons who have experience and skill as to such notes. The cashiers of banks, or those who deal extensively in

bank notes are often called to prove them. But it is admitted that a private instrument must be proved by some one who has a knowledge of the hand writing of the party, by correspondence or by having seen him write. And it is contended that this draft comes under this rule. If the draft be not technically a bank note, it possesses a great many of the characteristics of a bank note. It was payable by the bank and circulated as money. And no one can doubt, that the Bank of the United States having authorized such drafts to be drawn, was legally bound to redeem them. If the character of the draft be not identical with that of a bank note, it at least comes within the same rule of evidence, as to proving it to be genuine. But it is not necessary to prove a bank note or draft stolen from a letter, under the post office law, with the same degree of particularity as if either were charged to have been altered or forged. In most prosecutions of this kind, the notes or drafts are never recovered, and the only evidence of their genuineness is the opinion of the person who enclosed them. And all that has been required in a case where the bank notes have not been recovered, was proof that they were issued by banks reputed to be good, that the notes appeared to be genuine. Proof of the signature of the president or cashier in such a case, has never, it is believed, been required. Indeed, if this proof were held to be necessary, under such circumstances, a conviction would be impossible. The five dollar note on the Lumberman's Bank enclosed in the letter with the draft, was not produced at the trial, nor was it shown to be in the power of the prosecution to produce it. And yet it was sufficiently proved, if the person who enclosed it was able to state that the note was fair upon its face, appeared to be genuine, and passed as a note of value.

In the case of Rex v Ellins, Russ. & R. 188, a very late authority it was laid down in a case similar to the one under consideration, that "where the letter embezzled was described as containing several notes, it was held sufficient to prove that it contained any one of them, the allegation not being descriptive of the letter, but of the offence. And that it was not necessary to prove the execution of the instruments, which the letter is proved to contain." A bank note, draft, or other article of value stated with a letter, need not be described or proved with greater certainty than in a case of common larceny. The article enclosed must be named in the statute, and it must be proved to be what it is represented to be in the indictment. But more than this is not required.

The alleged defectiveness of the verdict remains to be considered. On four of the counts the jury have found the defendant guilty; on one of them there is no finding; and this it is contended renders the verdict

so defective as not to admit of a judgment upon it. If this position be sustainable the verdict must be set aside, and a venire de novo awarded. Where a special verdict finds only a part of the facts, which constitute the offence charged, it is clearly defective, and no judgment can be entered. As if in this case the jury had found the defendant guilty of purloining from the mail a letter, no judgment could have been entered, for he is charged in the indictment, with stealing a letter which contained a bank note and a draft. If these offences are charged in the indictment and the special verdict state evidence which only applies to two of them, the court may adjudge the defendant guilty of the two offences noticed, and enter an acquittal as to the residue. 2 Strange, 842. And this is relied on as an authority in the present case, to give judgment on the four counts embraced by the verdict, and direct not guilty to be entered on the first count.

The suggestion is not without some force, that finding the defendant guilty on the four counts, implies strongly that he is not guilty on the other count. In this view however, the question is not clear of difficulty. The finding of the jury is not special as to the facts, but, it may be said to be partial as it does not include all the counts. And there is no precedent in such a case, for amending the verdict. The finding is full on the four counts, but it is admitted that the first count, on which there is no finding must be disposed of; and if this cannot be done by the entry of not guilty as above suggested, or by a discontinuance, the verdict must be set aside. What injury or inconvenience can result to the defendant from the discontinuance of this count? The objection is urged that if discontinued, he will be liable to be again charged for the same offence. But suppose a new trial shall be awarded, as desired by the defendant's counsel, will he not be liable to be tried on the same count. The condition of the defendant, then, could not be made worse by the discontinuance, but would be made better, by a postponement and an almost certain abandonment of the charge. Indeed, no doubt is entertained by the court, that a conviction on either of the other counts would be a bar to any subsequent prosecution, for the offence, as charged in the first count. The offence alleged in the first count, is substantially the same as is set forth in each of the other counts. The variations are not such as to prevent a conviction on any one of the counts, from being a bar to the offence as charged in all the other counts. But the defendant's counsel insist that he is entitled to a trial on the first count. If a new trial were granted, could not the prosecutor abandon the first count? This will hardly be disputed. Such an abandonment does not operate as a pardon, but is a relinquishment of the prosecution, which implies an admission that it could not be sustained. But the power to discontinue this count under the sanction of the court is denied. And the case of State v. Davis [4 Blackf. 345], lately decided by the supreme court of this state, is referred to as having some bearing on the question. In that case the court decided, and very properly, that it was not error in the circuit court to refuse leave to the prosecuting attorney to enter a nolle prosequi after the evidence had been heard on the indictment. The writ of error was prosecuted to reverse a judgment of acquittal, and the court decided the judgment could not be reversed.

It is urged as a conclusive objection to the discontinuance, that a nolle prosequi after the jury are sworn in a civil case is a retraxit, and that a prosecutor cannot enter a retraxit in a felony. The effect of an entry of a nolle prosequi in a civil case does not seem to have been well settled in the books formerly. In some cases it was held to be a retraxit, which would bar a future suit; but in other cases it was considered a mere agreement to abandon the further prosecution of the particular action or count to which it was applied; and this seems to be the established modern doctrine on the subject. Such a discontinuance, then, constitutes no bar to a subsequent suit, in a civil case. In the case of Minor v. Mechanics' Bank of Alexandria, 1 Pet. [26 U. S.] 62, this doctrine is fully considered as applied to civil cases. The plaintiff in that case brought an action against Minor the cashier and his four securities, in a bond for the faithful discharge of his duties as cashier. They severed in their pleadings, and a judgment was obtained against the four securities before Minor pleaded. And on filing his pleas, the plaintiff discontinued the suit as to him, and the judgment remained against the four sureties. The bond being joint and several, the plaintiff could have sued one or all of the defendants, but he could not sue in the same action a greater number than one, unless all were included. But the supreme court held, as no special objection was stated to this proceeding, at the time, that the judgment was not reversible on a writ of error. In that case, the court say: "In cases of tort against several defendants, though they all join in the same plea, and are found guilty, yet the plaintiff may, after verdict, enter a nolle prosequi, as to some of them and take judgment against the rest. And they observe the reason is said to be, that the action is in its nature joint and several; and as the plaintiff might originally, have commenced his suit against one only, after verdict against several, he may elect to take his judgment against any one of them. But this cannot be done where the contract on which the action is brought is joint, and the defendants do not sever in their pleas."

It is not uncommon in the progress of a cause, either before or after the jury is called, for the plaintiff to ask leave to discontinue one of the counts in his declaration, and

where no objection appears to the discontinuance, it is suffered to be entered. The court however will see that no prejudice is done to the defendant by such an entry. And the same thing, in practice, has not unfrequently been done in a criminal case. The usual course however is, for the prosecutor to inform the court that he asks a conviction under certain counts in the indictment, and abandons the other counts. And on these counts, the jury are instructed to find not guilty. In case of misdemeanor, there would seem to be no substantial objection to a discontinuance of a count in the indictment, which could neither change the issue, nor by any possibility prejudice the defendant.

One good count in the indictment will sustain the judgment though there be several defective counts. This is not the rule in a civil case. The conviction or acquittal of the defendant on the first count, by the jury, could not have increased or lessened his punishment. The court see and know judicially from the counts that the same offence is charged in them all, and that the conviction on one of the counts subjects the defendant to the same punishment as a conviction on all of them. If a distinct offence were charged in the first count, for which a punishment different from that which must be inflicted under the other counts must follow a conviction, there would be more force in the objection to a nolle prosequi. With more reason, it might in such case be contended, that the issue being made on the first count and the case submitted to the jury, the defendant had a right to claim the verdict of the jury. That the prosecutor ought not to be permitted, after the evidence had been heard, to harrass the defendant, by discontinuing the prosecution and commencing it de novo. The court, in permitting a nolle prosequi, will always see that the defendant shall not be prejudiced. In this case, the court not only cannot see any prejudice which can result to the defendant from a discontinuance of the first count, but they cannot but know judicially that the offence charged in the first is the same as those charged in the other counts, and that a conviction on any one of the other counts will be a bar to the offence charged in the first count. They therefore can see no valid objection to the entry of a nolle prosequi on the first count. It is true, no precedent is found for such an entry, under the same circumstances. And from this it is argued that what has never been done the law does not authorize. This, though not a very conclusive argument, is worthy of consideration; but it cannot be safely applied to cases indiscriminately. Many things have been done which were too clear of doubt to be contested, and which have never been reported.

The motion for a new trial was overruled, and the defendant was sentenced to be confined, at hard labor, in the penitentiary of the state, ten years.