DILLON v. THE STATE.

Indictment for murder. After stating the venue, Court and term, the indictment proceeds: "The grand jury, &c., upon their oath charge that *Abner Dillon*, of said county, on the twentieth day of *July*, eighteen hundred and fifty-six, at the said county of *Miami*, did purposely, and with premeditated malice, then and there unlawfully and feloniously kill and murder *Margaret Dillon*, in the peace of the state then and there being, by then and there beating and striking her, the said, &c., upon the head, back and abdomen, with a shovel, and by then and there inflicting divers mortal wounds and injuries upon the head, back, and abdomen of her, the said, &c., which caused the death of her, the said, &c." *Held*, good under the statute.

In *The State* v. *Wilson*, 7 Ind. R. 516, the only point decided is, that the forms prescribed for use in criminal actions by the R. S. 1852, are not law—the title of the act in which they are embraced not expressing the subject-matter of the forms, as required by the constitution.

The statute of 1852, requires in an indictment, all the substantial allegations of a good indictment at common law; but the common-law precedents are not law in this state.

The legislature have laid down general rules for the material parts of an indictment, and the Courts will apply these rules, and thus mold forms by judicial decision.

In an indictment for murder, a description of the depth, &c., of the fatal wounds is not necessary.

The motion in arrest of judgment is now governed wholly by statute, and embraces but two points—1. The jurisdiction. 2. Whether the facts stated constitute a public offense.

APPEAL from the *Miami* Circuit Court.

STUART, J.—*Abner Dillon* was indicted in the *Miami* Circuit Court for the murder of his wife, *Margaret Dillon*, in *July*, 1856. He was tried in *March*, 1857; convicted of murder in the first degree, and sentenced to the penitentiary for life.

From this judgment *Dillon* appeals.

Three errors are assigned:

1. The Court erred in overruling the motion to quash the indictment.

2. The Court erred in overruling the motion for a new trial.

3. The Court erred in overruling the motion in arrest of judgment.

These errors will be examined in their order.

*First.* The motion to quash.

After the venue, Court, and term, the indictment proceeds in these words: "The grand jury, &c., upon their oath charge, that *Abner Dillon*, of said county, on the twentieth day of *July*, eighteen hundred and fifty-six, at the said county of *Miami*, did purposely and with premeditated malice, then and there unlawfully and feloniously kill and murder *Margaret Dillon*, in the peace of the state then and there being, by then and there beating and striking her, the said *Margaret Dillon*, upon the head, back and abdomen with a shovel, and by then and there inflicting divers mortal wounds and injuries upon the head, back and abdomen of her the said *Margaret Dillon*, which caused the death of her the said *Margaret Dillon*. (Signed) *O. Blake*, Pros. Att'y."

There is but the one count. It will be perceived that the indictment is somewhat fuller than the form prescribed by statute. 2 R. S. p. 356. But it does not pursue the common-law form, as found in books of approved authority. Crown Circ. Comp. p. 272.—*Id.* 278, 279.—Archb. Cr. Pl. tit. Murder.—3 Chit. Cr. L. 750, *et infra.*

In testing the sufficiency of this indictment, it may be necessary to take a distinction between the form prescribed by statute, and the substantive matters which, by another provision of the statute, the indictment is required to contain.

The form prescribed (2 R. S. p. 356) has long since been declared wholly void. *The State* v. *Wilson*, 7 Ind. R. 516. But the substantial matters which the statute requires that the indictment shall contain, remain wholly unaffected by the invalidity of the prescribed form. These requisites are pointed out in article 6, 2 R. S. p. 367.

We will first inquire, under this head, whether the indictment would be good at common law. In the Crown Circ. Comp. *supra*, p. 278, and in 3 Chit. Cr. L. 760, is found the form of an indictment against a husband for murdering his wife with a poker. This is as near the case at bar as could well be found.

This indictment is not defective in the technical mode

Nov. Term, 1857.

DILLON
v.
THE STATE.

of alleging the offense. The crime of murder is defined by statute. It is, as applicable to the facts here, thus: "If any person of sound mind shall purposely, and with premeditated malice, kill any human being, such person shall be deemed guilty of murder." This is the definition of murder first introduced in this state in the revision of 1843. R. S. 1843, p. 960. The same definition, with slight verbal abbreviation, was adopted, as above quoted, in 1852. 2 R. S. p. 388. Prior to that time, the definition of murder, in *Indiana*, was substantially in the technical formula of the common law. R. S. 1838, p. 207.

Under the revision of 1852, it is sufficient to allege that the prisoner purposely, and with premeditated malice, feloniously did kill and murder *A. B.*, &c. It is not necessary to allege that the murderer was of sound mind. 1 Blackf. 395. That is matter of defense. Nor are the words "malice aforethought," any longer essential to the validity of an indictment in this state. Our statute has adopted, and made technical, the corresponding and more familiar phrase, "premeditated malice." And the common law in relation to crimes, no longer prevails in *Indiana.* Crimes and misdemeanors shall be defined, and the punishment therefor affixed, by statute of this state, and not otherwise. 1 R. S. p. 352.—*Rosenbaum* v. *The State*, 4 Ind. R. 599.—*Hackney* v. *The State*, 8 *id.* 494. So that we have no common-law definition of murder in this state. The prosecutor must look alone to the definition of that crime as found in our own statute.

This indictment is not, then, to be tried by the common-law forms—nor yet by the forms given in the statute; but by the test hereafter noticed.

From some remarks used in *The State* v. *Wilson*, 7 Ind. R. 516, it seems to have been inferred that the common-law formula was still essential. The language referred to is this: "It did not, according to the common-law form, charge the assault, &c., to have been made wilfully, feloniously, and of malice aforethought." It is not a legitimate inference from this negative language, that the common-law form must be pursued. From what has already

been said, it is evident that if such were the meaning, it would be clearly erroneous. But the Court, in that sentence, is not giving an opinion on the point. It is simply reciting a fact. The point of the decision is that the statutory form is bad.

Had the form prescribed by the legislature been enacted under the proper head or title, it is quite as perspicuous and to the point as that which now prevails in *England*. See *Waterman's* Archb. tit. Murder.

The statutory and common-law forms, as such, being both out of the way, we must look to other parts of the statutes for the requisites which an indictment should contain. 2 R. S. p. 367.

Accordingly, we find that, in addition to the abortive attempt to prescribe forms, the legislature has laid down certain general principles for the guidance of the Courts in determining the sufficiency of criminal pleadings.

Thus, the indictment *must* contain,

1. The title of the action; the name of the Court to which the indictment is presented, and the names of the parties.

2. A statement of the facts constituting the offense, in plain and concise language, without repetition.

3. The indictment must be direct and certain as to the facts and the offense charged.

4. The language used shall be taken in its common acceptation, except terms defined by law, which shall be construed according to their legal meaning.

5. The very words used in the statute need not be strictly pursued; but words of similar import may be used.

6. The indictment will be sufficient if it can be understood therefrom that it was found by the grand jury of the proper county; that the defendant is named, or alleged to be unknown; that the offense was committed within the jurisdiction of the Court; that the offense charged is clearly set forth in plain and concise language, without repetition; and that the offense charged is stated with such a degree of certainty that the Court may pronounce judgment thereon according to the right of the case.

It is further provided, that no mistake of the name of the Court or county in the title; or the want of an allegation of time and place, when these have been once stated; or the statement of numbers in figures; or the omission of mere formal words, as "with force and arms," &c.; or an omission to state that the grand jury were duly impanneled; or surplusage or repugnancy, where there is sufficient to indicate the crime and the person charged; or any other defect or imperfection which does not tend to prejudice the substantial rights of the defendant, upon the merits; shall be sufficient to quash an indictment. 2 R. S. pp. 367, 368, 369.

It will be perceived that after all, the statute requires all the material allegations of a good indictment at common law. It was accordingly held, at an early day after the revision went into operation, that the statute had made no radical change in the substantial parts of criminal pleading. Thus, an information must contain all the substantial requisites of an indictment at common law. *The State* v. *Miles*, 4 Ind. R. 577.—*Mount* v. *The State*, 7 Ind. R. 654. Again, there is nothing in the revision that we are aware of, and surely no consideration of sound policy, which should induce the Courts to relax the strictness required in all the substantial parts of criminal pleading and evidence. *Rosenbaum* v. *The State*, 4 Ind. R. 599. Thus, the crime must be proved as laid. The state cannot charge a murder by poisoning, and be permitted to prove a murder by shooting. So, she cannot prefer a charge by way of recital, but only by direct averment. Thus, also, it was held, that the state must, by negative averment, show that the defendant is not within the exception in the statute, precisely as at common law. *Brutton* v. *The State*, 4 Ind. R. 601. In the latter case, it is added that, this exactness in criminal pleading, is not an idle technicality, but a safe and salutary rule, deduced from experience, and supported by the weightiest reasons. See, also, 4 Ind. R. 607.—*Gardner* v. *The State, Id.* 632.—*State* v. *Downs*, 7 *id.* 237.—*Zellers* v. *The State, Id.* 659.—*The State* v. *Jackson, Id.* 270.—

*Hackney* v. *The State*, 8 *id.* 494.—*Hampton* v. *The State, Id.* 336.—*Boswell* v. *The State, Id.* 499.

The certainty required in an indictment, in addition to the definition of the crime, is a clear and positive statement of the offense. This consists of the matter to be charged, and the mode of charging it. The certainty required in the statement of the offense, is that which was formerly, under the old system of pleading, required in a declaration. 1 Chit. Cr. L. 172.—16 Mass. R. 141. But this does not mean that the words to which time and technical usage have given precision, can be safely dispensed with. 1 Chit. *supra.*

But it is insisted by counsel, that the means of killing are not averred—that they are only stated by way of recital. This defect, if it existed, would be fatal to the indictment on a motion to quash. For all the material facts constituting the offense must be positively alleged. 1 Chit. Cr. L. 231.—1 Waterman's Archb. 87. And the reasons for this particularity are forcibly stated in 1 Stark. Cr. Pl. 73.

The whole indictment, in this case, is a single sentence, and, in effect, a single allegation. There is no difficulty in fairly understanding the pleader in every part of the charge. When it is averred that the murder was committed by beating on the head, &c., with a shovel, it has relation back to *Dillon*, who wielded that weapon. The allegation is, that *Dillon* committed the murder by these means. So, the allegation that mortal wounds were inflicted, and that of these mortal wounds inflicted by her husband she died, can relate to no one but *Dillon*. In the language of the statute, there does not seem to be any defect or ambiguity which tends to prejudice the substantial rights of the prisoner upon the merits. 2 R. S. p. 369.

It is said the wounds are not described. It is not necessary to describe the depth or breadth of the fatal wounds. *Dias* v. *The State*, 7 Blackf. 20, and the authorities there cited.

In a word, the legislature has laid down certain general rules in relation to the material facts of an indictment, and

Nov. Term,
1857.

DILLON
v.
THE STATE.

left the Courts to apply these rules, and mold the forms, by judicial decision.

*Secondly.* The second error assigned is, the overruling of the motion for a new trial.

The evidence is all in the record, and makes a very strong case against *Dillon.* It shows that the husband, with a deadly weapon in his hand, inflicted several wounds on vital parts, as laid in the indictment. Even when his wife was prostrated on a sick bed, from the effects of his previous violence, he beat her again with the fatal shovel. It appears that he had repeatedly threatened her life in the grossest terms. In one instance, he swore "she should never leave his roof till she left a corpse, and that should not be long." When the neighbors, as an act of humanity, insisted, against his will, on changing her clothes, they discovered numerous bruises on the arms, shoulders, and small of the back. The physicians testify to seeing these wounds before her death, and that they looked upon her case as hopeless. They are unanimous in saying that the bruises inflicted on the small of the back, bursting the blood-vessels, and causing extravasation and inflammation, were the real cause of her death. These wounds on the back, were, therefore, the fatal wounds of which she died. And this evidence is given by physicians, who saw her before death, but after the injuries were inflicted, and who conducted the *post mortem* examination. On that examination, the physicians found all the system in a healthy condition, only as connected with these wounds—particularly those on the back and latterally towards the right side. The evidence further shows, that he repeatedly beat her with such weapons as his passions supplied—such as clubs, stones, brickbats, and the fatal shovel. This he admitted himself, adding, with an oath, " I can't stand it—I will kill her first."

It seems that the last sentence had reference to his wife's mental condition. For, by this time, Mrs. *Dillon* was partially insane. It was in reference to this, that he told one of the witnesses (*Jefferson*) that he had thrown a brick at

his wife as he was driving her from home, and when he threw it he intended to kill her.

Altogether, the evidence is of the most deliberate and revolting murder. It was not a single blow struck in passion. He both expressed and showed a deliberate purpose to kill his wife, followed up from day to day, with the use of deadly weapons, and this, too, towards a woman whose mental infirmity had been, it is fair to presume, aggravated, if not entirely brought on, by his cruelty.

Such is the general character of the evidence upon which the jury found him guilty of murder in the first degree. We do not see how we could construe it more favorably than the jury has done. If the extreme penalty of the law was not inflicted, it was entirely owing to the clemency of the jury.

The doubt urged in argument, whether the wounds he inflicted were necessarily mortal, and the immediate cause of death, is very ingeniously presented. But here, again, the jury, after hearing the evidence and argument, have solved that question, and decided that they were mortal.

The question thus suggested was a fair one to be presented on the trial. It was the right of the prisoner to introduce evidence to that point, and he did so. But the evidence, in that particular, is feeble, going into vexed questions of medical science, which, though proper to be considered in the investigation as to the cause of death, should not be, and happily, in this instance, were not, permitted to obscure the clearer indications and moral weight of the other parts of the evidence. Here, the wounds were inflicted by *Dillon*, with a deadly weapon, on a vital part, and death ensues. The conclusion of law is, that *Dillon* is guilty of the murder. If he would escape that result, he must raise a presumption that the wounds were not mortal, but only proved so from want of proper surgical treatment. Thus, for example, if *A.*, with premeditated malice, &c., shoot at *B.*, and injure his hand, which, owing to neglect or improper treatment, inflames and death ensues; this is not murder. For the injury is not inflicted upon a vital part, nor necessarily fatal. If, from other

causes, it proves mortal, that result cannot change the crime from what it really was. The fact that death ensued under such circumstances, cannot transform the offense from an assault and battery with intent to commit murder, into murder itself. Death, in such cases, is not the immediate or necessary result of the injury. We have already intimated that such defense is legitimate, and should be considered by the jury, in order to reach a satisfactory conclusion as to the cause of the death. But while such inquiries are admissible in defense, they should be watched, and their proper, relative weight in the case determined with great care and caution. Otherwise, the jury may suffer themselves to become involved in the mysteries and jargon of medical speculation, to the neglect of the higher and weightier chapters of the evidence. Thus, in the case at bar, amid so many injuries to vital parts, the inquiry into their fatal character is necessarily more intricate and unsatisfactory to the defense. In such a case, it can be of very little importance, comparatively, whether the wounds indicated one species of inflammation or another—whether this or that was the inflamed part, precipitating the fatal result. The question for the jury is a practical one. Did death ensue from the wounds inflicted on a vital part, with a deadly weapon, in the hands of *Dillon?* or was it the result of other causes?

On this point we have not, as the jury had not, a reasonable doubt. Had the punishment been death, we could not, upon any sound legal principles, have interfered with the result.

*Thirdly.* The last error assigned is, the overruling of the motion in arrest. That motion is now governed solely by statute, and has a very limited range. It embraces only two points—

1. The jurisdiction of the Court.

2. Whether the facts stated constitute a public offense. 2 R. S. p. 380.

There is no question raised here as to jurisdiction. The crime was committed in *Miami* county, and the prisoner

indicted, tried, and convicted in the Circuit Court of that <span>Nov. Term,<br>1857.</span>
county.

That a public offense was properly charged in the indict-
ment has been already determined on the motion to quash.

*Per Curiam.*—The judgment is affirmed with costs.

*H. P. Biddle*, *N. O. Ross*, and *R. P. Effinger*, for the
appellant.