## KELLEY v. THE STATE.

GRAND JURY. — *Selection After Commencement of Term.* — *Answer in Abatement.*—It was not a sufficient reason for the abatement of an indictment, that the grand jury which presented it—selected under a statute (2 Rev. Stat. of 1876, p. 417) providing that the persons chosen thereunder "shall constitute the grand jury of the county for the next ensuing two terms of the circuit court"—was selected after the commencement of the term of the circuit court at which the indictment was found.

CRIMINAL LAW.—*Instruction to Jury.—Manslaughter.*—On the trial of an indictment for murder, the court, in its charge to the jury, stated, "If you should find from the evidence, beyond a reasonable doubt, that the defendant, without malice, either express or implied, and with no intent to murder, unlawfully, involuntarily killed the decedent," naming him, "this would be manslaughter," the context of the charge giving the full statutory definition of manslaughter.

*Held*, that the defendant could not complain of the omission, in the portion of the charge quoted, of the words, "but in the commission of some unlawful act."

SAME. — *Murder.* — *Indirect Cause of Death.* — Where wounds have been inflicted by one person upon another, and the latter afterward dies, it is not indispensable to a conviction of the former of murder or manslaughter, under an indictment based upon the infliction of such wounds, that they were *necessarily* fatal, and were the *direct* cause of the death; but if they caused the death indirectly, through a chain of natural effects and causes, unchanged by human action, it is sufficient in this regard.

SAME.—Where a person has inflicted wounds upon another, which are fatal, and of which the latter dies, or which are dangerous in themselves, though not necessarily fatal, and cause congestion of the brain, of which the wounded person dies, or congestion of the brain, so induced, causes the exposure of the injured person to the inclemencies of the weather, by which he dies, it must be held that the person who gave the wounds caused the death by the infliction of them.

From the White Circuit Court.

*A. W. Reynolds* and *E. B. Sellers* for appellant.

*C. A. Buskirk*, Attorney General, for the State.

BIDDLE, J.—John Kelley was indicted for the murder of Richard Herron. He answered the indictment by a plea in abatement, the substance of which is, that the grand jury which presented the indictment was selected by the board of commissioners of the county, on the 6th day of March,

1876, and that the term of court for which it served, and at which the indictment was presented, commenced on the 28th day of February, 1876. It is contended by the appellant, that, as the act under which the grand jury was selected (2 Rev. Stat. of 1876, p. 417) provides that the persons so chosen "shall constitute the grand jury of said county for the next ensuing two terms of the circuit court," therefore, the persons so chosen, and who presented the indictment, did not legally constitute the grand jury for the term which had commenced before they were selected. This, we think, would be too strict a construction of the act. The ensuing term of a court does not necessarily mean that the entire term shall ensue the selection of the grand jurors. A term of court may commence in one month, and extend into the next month, and, indeed, through many months, at any time during which the grand jury may present indictments, and that part of the time which follows the time at which the jury is selected may fairly be held as the ensuing term. This, we think, looking at the intention of the legislature, is a fair construction of the words used in the act; especially against an answer in abatement, which is not favored in law, and against which every intendment must be taken. *Ward* v. *The State,* 48 Ind. 289; *·The Board of Commissioners, etc.,* v. *The Lafayette, etc., R. R. Co.,* 50 Ind. 85, 117. We are of opinion, therefore, that the court committed no error in sustaining the demurrer to the answer in abatement. The facts alleged are not sufficient to abate the indictment.

The court, upon the trial, instructed the jury as follows:

"Manslaughter, as defined by the statute, is when one person unlawfully kills a human being, without malice, either expressed or implied, either voluntarily, upon a sudden heat or involuntarily, but in the commission of some unlawful act; so, in this case, if you find from the evidence, beyond a reasonable doubt, that the defendant, John Kelley, without malice, either express or implied, either voluntarily, upon a sudden heat of passion, but with no intent to murder, unlawfully killed the decedent, Richard Herron, this

would be manslaughter; or if you should find from the evidence, beyond a reasonable doubt, that the defendant, without malice, either express or implied, and without any intent to murder, unlawfully, involuntarily killed the decedent, Richard Herron, this would be manslaughter; or if you should be satisfied from the evidence, beyond a reasonable doubt, that the defendant, John Kelley, in the commission of an unlawful act, killed the decedent, Richard Herron, this also would be manslaughter; and, although the charge in the indictment is that of murder in the first degree, yet, under this charge, you may find him guilty of either murder in the second degree or manslaughter."

It is claimed, on behalf of the appellant, that this instruction is erroneous, especially this part: "Or if you should find from the evidence, beyond a reasonable doubt, that the defendant, without malice, either express or implied, and with no intent to murder, unlawfully, involuntarily killed the decedent, Richard Herron, this would be manslaughter." This part of the instruction, unconnected with what precedes and follows it, is not a full definition of the second branch of manslaughter, lacking the words, "but in the commission of some unlawful act;" yet this deficiency is nothing of which the appellant can complain. The want of completeness, if anything, is in his favor; besides, the full context of the instruction gives the definition of manslaughter in full. We can perceive no error in giving this instruction.

It is also insisted that the evidence is insufficient to support the verdict. We have read it and weighed it carefully. It is admitted that, on or about the 14th of January, 1876, blows were inflicted on the head of Richard Herron, causing serious wounds, and that afterwards he was found dead; but it is earnestly urged that the evidence is not sufficient to prove that Kelley inflicted the wounds, or that Herron died from the effects of the wounds so inflicted.

Touching the infliction of the wounds, John Toothman testified as follows: After stating that he knew the appellant and Richard Herron, he proceeded: "I last saw Rich-

ard Herron at Idaville, on Friday, January 14th, 1876, at Jack Kelley's, about ten o'clock of the day. I took a couple of letters down to the post office, and put the letters in the post office; I came back past Jack Kelley's house; I saw Jack Kelley strike Dick Herron two or three times with a hammer; I heard Dick say, ' Jack, don't kill me.' I mean Dick Herron; Dick is all his name. I pushed the door open and stepped into the door; Mr. Kelley let his hand drop with a hammer in it, and turned round, and he gave me a quart bottle, and told me to go to the drug store and get some whiskey. Dick Herron was leaning over the bed, and Kelley had hold of his right arm, I think."

Two of the appellant's daughters testify in the case. One states that she was at the house that day, and saw no fuss between her father and Herron; the other, that she was also there on the same day, and saw no difficulty between the parties. There was also some confusion in the statements of other witnesses, as to the time of day when Herron was afterwards seen in Idaville, and without any appearance of wounds or injury upon him, but nothing that substantially contradicts the testimony of Toothman. The daughters of Kelly might have been at the house on that day, and not have seen the blows inflicted upon Herron; others may have seen him at different times afterwards, on the same day, and easily have been mistaken as to the hour of the day; and he might have borne fatal wounds upon his head, without their showing any external appearance to casual observation. About a week afterwards, the body of Herron was found, with severe wounds upon the head, which facts also tend to support Toothman's statement as to the character of the wounds, and the part of. the body upon which they were inflicted.

With regard to the question as to whether the wounds on the head caused the death of Herron, Dr. H. P. Anderson testified:

That he was a physician and surgeon; knew Herron; examined the wounds upon his head; there were eight or

nine; he described them; did not think Herron could survive; that his death was caused by the effect of the wounds upon his head.   It was admitted that Herron was an intemperate man.

Dr. William Spencer testified:

"Am a physician; have practiced medicine and surgery since 1855; examined the wounds on Herron's head; they were in a very vital part; he would die within twelve or twenty-four hours after their infliction; think he died from the wounds and exposure; could not tell from the data what the cause of his death was; could not say that he had *delirium tremens* just previous to the infliction of the wounds; can't tell but that he might have frozen to death; don't know but he died of *delirium tremens.*"

Dr. Robert J. Clark testified:

" Physician and surgeon; six years; knew Herron; examined his body; twelve or thirteen scalp wounds; dangerous; inflicted twelve or twenty-four hours before his death; blunt instrument; might have been a hammer; cause of his death congestion and exposure; think a healthy man would have frozen that night."

These are the essential points of the evidence bearing upon the cause of Herron's death.   As his body had been exposed out of doors to the inclemencies of the season for several days before it was found, the counsel for the appellant strongly press the point that the evidence does not prove, beyond a reasonable doubt, that the wounds caused his death; that he might have died of congestion of the brain, or exposure to the cold weather.   But it is not indispensable to a conviction, that the wounds were *necessarily* fatal, and were the *direct* cause of death.   If they caused the death indirectly, through a chain of natural effects and causes, unchanged by human action, it is sufficient as to this point.   The principle has been clearly and profoundly stated by Bar, an eminent German jurist, (Die Lehre von Causalzusammenhange, p. 11) as follows:

"A man is, in the eye of the law, the cause of a phenom-

enon, when he is the condition by which the regular sequences of the phenomena of human life are changed." And we believe this proposition has been fully sustained by the supreme court (Obertribunal) of Prussia, but perhaps carried farther in its application than American authorities would warrant. But the question has been long since carefully settled in England and America. Hawkins, in his Pleas of the Crown, vol. 1, p. 118, says:

" In what cases a man may be said to kill another; not only he who by a wound or blow, or by poisoning, strangling, or famishing, etc., directly causes another's death, but also in many cases, he who by wilfully and deliberately doing a thing which apparently endangers another's life, thereby occasions his death, shall be adjudged to kill him."

In Hale's Pleas of the Crown, vol. 1, p. 428, it is said:

"But if a man receives a wound, which is not in itself mortal, but either for want of helpful applications, or neglect thereof, it turns to a gangrene, or a fever, and that gangrene or fever be the immediate cause of his death, yet, this is murder or manslaughter in him that gave the stroke or wound, for that wound, though it were not the immediate cause of his death, yet, if it were the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so consequently is *causa causati.*"

In the reign of Charles II., " Edward Rew was indicted for killing Nathaniel Rew, his brother, and, upon the evidence, it was resolved, that if one gives wounds to another, who neglects the cure of them, or is disorderly, and doth not keep rule which a person wounded should do; yet, if he die, it is murder or manslaughter, according as the case is, in the person who gave the wounds, because if the wounds had not been, the man had not died; and, therefore, neglect or disorder in the person who received the wounds shall not excuse the person who gave them." J. Kel. 26.

According to the principles laid down by these ancient authorities, as applicable to this case, if Kelly, as charged,

inflicted the wounds upon Herron, and they were fatal, of which he died; or if they were dangerous in themselves, though not necessarily fatal, and the wounds caused the congestion of the brain, of which Herron died; or if the congestion of the brain caused his exposure to the inclemencies of the weather, by which he died; it must be held that Kelley, by the infliction of the wounds, caused the death of Herron. And these principles are fully supported by a continuous line of authorities, since they were first laid down as law. We cannot, therefore, depart from so well established a rule. *Regina* v. *Minnock,* 1 Crawf. & Dix C. C. 537; *Nixon* v. *The People,* 2 Scam. 267; *Regina* v. *Holland,* 2 Moody & Rob. 351; *Commonwealth* v. *M'Pike,* 3 Cush. 181; *McAllister* v. *The State,* 17 Ala. 434; *State* v. *Baker,* 1 Jones N. C. 267; *The Queen* v. *West,* 2 Car. & K. 784; *Parsons* v. *The State,* 21 Ala. 300; *State* v. *Scott,* 12 La. An. 274; *Dillon* v. *The State,* 9 Ind. 408; *Commonwealth* v. *Hackett,* 2 Allen, 136.

It is our opinion that the evidence fairly warrants the conviction, beyond a reasonable doubt.

We have thus carefully examined all the questions reserved in the record, and presented on behalf of appellant by his counsel, and are unable to find any error in the proceedings.

The judgment is affirmed.

Petition for a rehearing overruled.