William Mane BOOKER and Dickie Durrad Bridges, Appellants (Defendants below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 578S80.

Supreme Court of Indiana.

March 23, 1979.

Rehearing Denied May 10, 1979.

John F. Surbeck, Jr., Deputy Public Defender, Thomas L. Ryan, Fort Wayne, for appellants.

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

William Mane Booker and Dickie Durrad Bridges, defendants, were each found guilty, in a trial to the court, without the intervention of a jury, of robbery and felony murder. They jointly appeal their convictions and present three issues for determination:

1. Did the trial court err in overruling the defendants' motion to suppress evidence resulting from the defendants' in-custodial interrogation?

2. Was there sufficient evidence to support the trial court's finding and judgment of guilt?

3. Did the trial court err in overruling the defendants' objection to a hypothetical question?

Investigating a house burglary in which a stolen car had been used, Officer John Phenicie, of the Fort Wayne Police Department, spotted the car parked at the rear of 1210 Oak Street. Phenicie and his partner began checking houses nearby to see if anyone had seen the person who had left the automobile there. Phenicie saw Booker (whom he recognized) leaving a house several houses away; he called to Booker; Booker ran. Booker was apprehended and was arrested under outstanding warrants for No Operator's License and Driving While Suspended; he was also arrested for Fleeing a Police Officer. After Phenicie read Booker his rights, he asked Booker if he would like to go to the scene of the burglary; Booker said that he would go because he had not done anything wrong. Booker was identified by the complainant

at the scene. Phenicie added the preliminary charge of burglary, and Booker was taken to the City-County Building where he was again advised of his rights and signed a written waiver. He then implicated Bridges in the burglary.

Within the course of the interrogation, Booker admitted his involvement in the house burglary. Upon prompting by the officers, Booker also indicated that he and Bridges had been involved in other burglaries. The officers advised him that since he was under arrest for first-degree burglary that it would be possible that he would not be charged with any other first-degree burglary and that it would "be better for him to get it off of any other crime that he had committed." Booker elaborated upon several burglaries, and then the officers asked if there was anything else. Booker said two or three purse snatchings but not the one where the old man died. The officer testified, "At this time we again advised him that possible [sic] it would be better for him to get it off his chest, in other words, and tell us details." Booker then related that he was involved, with Bridges, in stealing a purse and wallet from an elderly couple after which crime the man died.

Bridges was picked up for questioning. After he was informed of his rights, in the presence of his mother, he described his involvement in the house burglary. The officers then informed him that Booker had implicated him in purse snatchings. Bridges's mother was told that "her son was involved where a man died." Bridges's mother cautioned her son not to lie, that "One lie will lead to another." Bridges described his participation in the purse snatching which resulted in the old man's death.

On a later date, Booker was re-interviewed, and he stated that a third person, Leroy McGraw, had stayed in the car while the purse snatching occurred. McGraw testified at trial that he had seen Booker and Bridges robbing the elderly couple. After the crime, Booker and Bridges had returned to the car and McGraw drove them away; McGraw threw the purse and the wallet that were taken from the man and woman out of the car.

## I.

A detailed hearing on the defendants' motion to suppress was held; the trial court denied the motion. Upon appeal, the defendants urge that such denial was erroneous because their confessions were the result of an improper arrest. This contention is meritless. Booker was arrested initially on two outstanding traffic warrants and for fleeing a police officer. Booker had been informed of his rights when he agreed to go to the scene of the house burglary and was identified. Once identification had been made, Phenicie was justified in adding the preliminary charge of burglary. Therefore, the arrest of Booker was completely proper.

Bridges was picked up because Booker had implicated him in the house burglary and in the purse snatching. The arrest of Bridges was based upon probable cause.

Booker argues that the police induced him to confess to the purse snatching, which resulted in his conviction for felony murder, by promising that he would not be charged because he was already charged with first-degree burglary on the house burglary. The record reveals no such promise. Booker was told that it was possible that he would not be charged with any other first-degree burglary. When Booker mentioned the purse snatching "where the old man died," the police simply stated that it would be better for him to get it off his chest by telling the details. Any supposed inducements fall far short of the direct promise of immunity extant in *Ashby v. State*, (1976) 265 Ind. 316, 354 N.E.2d 192.

Bridges's confession was not induced by the police. The evidence most favorable to the state discloses that Bridges and his mother were informed of Bridges's rights and signed written waivers. Bridges admitted his involvement in the purse snatching after his mother told him not to lie.

Even after Bridges confessed, Booker augmented his confession by implicating McGraw. Booker had been advised once again of his constitutional rights, and he had stated that he understood them before the second interview had commenced. No promises or inducements were made to Booker before the second interview was made.

None of the confessions was offered at trial anyway. The defendants argue, however, that since McGraw testified at trial, his testimony should have been suppressed since his testimony was a "fruit" of the induced confessions. As we have discussed, the record does not demonstrate that the police improperly induced any confession. The trial court correctly denied the defendants' motion to suppress, and McGraw's testimony was properly admitted.

## II.

The defendants posit that there was insufficient evidence to support a conviction. The record is clear. Ralph and Neva Hill, husband and wife, were returning from a prayer meeting on the evening of November 3, 1976. Mr. Hill, seventy-four years of age, unlocked the rear door of the couple's home and held the door open for Mrs. Hill, seventy years of age, to enter. The defendants attacked the Hills; Bridges pulled Mrs. Hill's purse and watch off her arm; Booker wrestled Mr. Hill off the step, causing him to fall to his hands and knees, removed his billfold from his hip pocket, and mauled him. Mrs. Hill stood there screaming. The defendants then fled from the yard, got into McGraw's car, and McGraw drove away.

After the attack, Mr. and Mrs. Hill went inside. Mrs. Hill called the police and the minister of their church. Mr. Hill spoke briefly to the minister telling him, "No, I'm not hurt. My shoulder hurts a little, but that's all. It's not important for you to come." The minister testified that Mr. Hill was breathing "quite hard." Mrs. Hill then called her niece. While she was talking, she heard a crash in the kitchen. She saw Mr. Hill stretched out on the floor; his skin appeared purple, and there were no signs of life. Mrs. Hill returned to the phone and told her niece that she must have the phone for an emergency.

Mr. Hill never regained consciousness. Emergency procedures failed, and he was pronounced dead upon arrival at the hospital. An autopsy identified the cause of death as a heart condition known as "arrythmia," which the pathologist believed had been brought on by the physical and emotional stress occasioned by the robbery.

Ind.Code § 35–13–4–6 (Burns 1975) provides that the unlawful taking from the person of another of an article of value by violence *or* by putting in fear constitutes robbery. Even though the information charging the defendants utilized the conjunction "and" in place of the "or" employed within the statute, the state was only obligated to prove either of the acts charged. *LaMar v. State,* (1953) 231 Ind. 508, 109 N.E.2d 614; *Rosenbarger v. State,* (1900) 154 Ind. 425, 56 N.E. 914. Here, the evidence was abundant that the act of wrestling the wallet and purse from Mr. and Mrs. Hill was violent in nature. The defendants are incorrect in their assertion that the evidence was not sufficient to prove robbery.

Next, the defendants urge that Mr. Hill was not killed in the commission of the robbery since the robbery had terminated before Mr. Hill's death. This posture ignores the medical evidence adduced which was to the effect that the emotional and physical stress of the attack by the defendants created the arrhythmia (the beating or contracting of the heart in an irregular pattern) which led to cardiac arrest.

In *Kelley v. State,* (1876) 53 Ind. 311, this Court held:

> "[I]t is not indispensable to a conviction, that the wounds were *necessarily* fatal, and were the *direct* cause of death. If they caused the death indirectly, through a chain of natural effects and causes, unchanged by human action, it is sufficient as to this point. The principle has been clearly and profoundly stated by

Bar, an eminent German jurist, (Die Lehre von Causalzusammenhange, p. 11) as follows:

" 'A man is, in the eye of the law, the cause of a phenomenon, when he is the condition by which the regular sequences of the phenomena of human life are changed.' And we believe this proposition has been fully sustained by the supreme court (Obertribunal) of Prussia, but perhaps carried farther in its application than American authorities would warrant. But the question has been long since carefully settled in England and America. Hawkins, in his Pleas of the Crown, vol. 1, p. 118, says:

" 'In what cases a man may be said to kill another; not only he who by a wound or blow, or by poisoning, strangling, or famishing, etc., directly causes another's death, but also in many cases, he who by wilfully and deliberately doing a thing which apparently endangers another's life, thereby occasions his death, shall be adjudged to kill him.' " (Original emphasis.) *Kelley v. State,* (1876) 53 Ind. 315, 316.

Later, in *Sage v. State,* (1891) 127 Ind. 15, 30, 26 N.E. 667, 674, the Supreme Court summarized by stating, "It is a familiar principle of criminal law that it is not necessary that death should be the proximate result of the felonious act."

■ The defendants complain that the victim suffered from arteriosclerosis and that without the presence of that condition, the anoxia (diminished oxygen supply to the atrium) might not have triggered the arrhythmia. We need not, however, weigh the evidence on appeal. The doctors testifying at trial stated, upon a reasonable medical certainty, that death was a result of the circumstances of the attack.[1] There was sufficient evidence to support the judgment of guilty on the charge of felony murder.

III.

■ The defendants' objection to the following question, which question was addressed to Dr. Allen Aldred, was overruled:

"Are you telling us then that in your opinion, based upon a reasonable medical certainty, that the stress engendered by the incident of the attack, the robbery, was the direct cause of Mr. Hill's fatal cardiac arrest?"

The basis for defendants' objection was that the question presumed that the robbery was stressful, a fact which the defendants maintain was not in evidence and was therefore not properly a part of the hypothetical question. It was within the province of the trier of fact to determine, having been informed of the events constituting the robbery, whether or not the robbery was stressful. *See Howard v. State,* (1976) 264 Ind. 275, 342 N.E.2d 604. Once the trial court did determine that the robbery probably engendered stress, the court properly allowed the witness to express his medical opinion regarding the effect of the stress. The trial court did not abuse its discretion in overruling the objection to the question.

For all of the foregoing reasons there was no trial court error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.

---

1. Whenever a factfinder, in such case as this, must reach a satisfactory conclusion as to the cause of a death, we agree with the holding in *Dillon v. State,* (1857) 9 Ind. 408, 416, that inquiries regarding cause, though admissible in defense, should be watched, and their proper, relative weight in the case determined with great care and caution. "Otherwise, the jury may suffer themselves to become involved in the mysteries and jargon of medical speculation, to the neglect of the higher and weightier chapters of the evidence."