Ernest MEREDITH,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–182A23.

Court of Appeals of Indiana,
First District.

Aug. 31, 1982.

Halbert W. Kunz, Kunz & Kunz, Indianapolis, Sidney R. Lindsey, Rockport, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Ernest Meredith appeals from his conviction of five counts of operating a motor vehicle for hire without authority from the Public Service Commission of Indiana, in violation of Indiana Code Section 8–2–7–31.[1]

We reverse and remand.

## FACTS

Meredith was issued five traffic tickets between May 5, 1980, and April 28, 1981, each charging him with a violation of Indiana Code Section 8–2–7–31. The five causes were tried together on June 18, 1981, on the following stipulated facts.[2] Meredith stated that if he were to put on his evidence it would show that he is a coal truck driver engaged in hauling coal owned by B & M Coal Corporation. This coal is either mined by B & M on tracts it leases or purchased at other mine sites in Pike, Warrick, and Spencer counties in Indiana. The coal is transported by truck on state highways of Indiana directly to B & M's coal dock on the Ohio River at Rockport, Spencer County, Indiana. There the coal is weighed and is either stockpiled or dumped by the truck directly into a barge at the Ohio River shoreline. None of the coal is sold to anyone in Indiana; rather, it is transported by barges to power plants in Kentucky or Tennessee or is later shipped overseas. The state and Meredith agreed that the coal trucks are not leased to B & M and the operators are not employed by B & M. Instead, the coal haulers, including Meredith, are independent operators for hire, some of whom own their own trucks, and they are paid by the ton for moving the coal.

The Spencer Circuit Court found that Meredith's operations are within the jurisdiction of the Public Service Commission of Indiana and involve intrastate commerce, and that he should have obtained operating authority from the PSC but failed to do so. Judgment of conviction was entered on September 23, 1981, on each of the five counts, and Meredith was fined $1.00 on each count and was assessed court costs in the amount of $34.00.

## ISSUES

Meredith presents the following issues for our review:

"1. Does the Public Service Commission of Indiana have jurisdiction over the trucking operations of defendant Meredith?

"2. Do the operations of the defendant Meredith constitute interstate or intrastate commerce?

"3. Does the defendant require operating authority from the Public Service Commission of Indiana?"

## DISCUSSION AND DECISION

■ Meredith was found guilty of five counts of violating Indiana Code Section 8–2–7–31, which constitute Class C infractions, Ind.Code § 8–2–7–41(c) (1979), and which, at the times of their alleged commission, were punishable under Indiana Code Section 35–50–4–4 (1977)[3] by a fine of not more than $500 per infraction. It is firmly established that "every conviction must be supported by evidence upon each material element of the crime charged, and that evidence must support the essential conclusions beyond a reasonable doubt." *Rosell v. State*, (1976) 265 Ind. 173, 174, 352 N.E.2d

1. "Sec. 31. No person, as defined in this act, shall operate any motor vehicle over the highways within the borders of this state for hire, unless such operations are specifically exempt under provisions of this act, without first having obtained appropriate operating authority from the commission so to do, and having otherwise complied with all other applicable provisions of this act."

2. The state did not stipulate the truthfulness of the facts which Meredith alleged, but the deputy prosecutor stated that the state had no evidence to controvert the facts which Meredith alleged his evidence would show.

3. Repealed and replaced by Indiana Code Section 34–4–32–4(c) (1981), effective September 1, 1981.

750, 751. *Accord Padgett v. State*, (1978) Ind.App., 380 N.E.2d 96, 97. Because infractions, at the time of Meredith's alleged violations and subsequent trial, were punishable under our criminal code, Title 35 of the Indiana Code, the reasonable doubt standard was applicable to Meredith's prosecution.[4]

An essential element of the infraction defined in Indiana Code Section 8–2–7–31 is that the motor vehicle be operated "without first having obtained appropriate operating authority from the commission so to do, . . . ." In the course of our review of the briefs and record to resolve the issues raised by Meredith, we have observed that there was no stipulation or other evidence presented at trial which tends to show that Meredith, in fact, operated his truck without having secured the appropriate operating authority. The stipulated facts speak only to the nature of Meredith's relationship with B & M, the manner in which he transported the coal, and the sources and destinations of the coal. None of these facts gives rise even to an inference that Meredith operated his truck without the appropriate authority. Although Meredith's legal arguments to the effect that he needed no such authority from the PSC would appear to be based on the assumption that he had no such authority, legal arguments cannot be substituted for evidence and reasonable inferences drawn from that evidence where the criminal liability of a person is at stake and, consequently, where the state has the burden of proving each material element of the offense beyond a reasonable doubt. Our observation as to this deficiency in probative evidence does no violence to the rule that we cannot weigh the evidence on appeal. *Pinkston v. State*, (1982) Ind., 436 N.E.2d 306, 310; *Biggerstaff v. State*, (1982) Ind.App., 435 N.E.2d 621, 623. What we have discovered is a total lack of evidence on a material element of the offense.

Meredith has not raised on appeal the matter of the sufficiency of evidence to support his conviction. However, we recognize the principle that some errors are so fundamental as to permit us to review them although they have not been properly raised. As this court said in *Winston v. State*, (1975) 165 Ind.App. 369, 373–76, 332 N.E.2d 229, 231–33, *trans. denied*:

"The 'fundamental error' doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that 'the record reveals error so prejudicial to the rights of the Appellant that he could not have had a fair trial.' *Grier v. State* (1968), 251 Ind. 214, 216–217, 240 N.E.2d 494, 496. The doctrine of 'fundamental error' allows an appellate court to by-pass the normal rules of appellate procedure, such as the requirement of a timely and specific objection, and, in so doing, to disregard the sound judicial policy underlying that procedure. The circumvention of established procedures permitted by the 'fundamental error' doctrine constitutes a forceful reason for our Supreme Court's reluctance to invoke the doctrine unless the record reveals 'blatant error' that denies 'the Appellant fundamental due process.' *Webb v. State, supra*, 284 N.E.2d [812] at 815.

" . . . .

" . . . The Supreme Court's definition of fundamental error in *Grier v. State, supra*, as being an error which is so prejudicial to the defendant that he '*could not have had a fair trial*', Id. at 217, 240 N.E.2d at 496 (emphasis supplied), suggests to us an error that pervades the climate of the proceedings below, *viewed as a whole*, depriving the defendant of any realistic opportunity for a fair hearing. . . .

" . . . .

" . . . In the cases in which Indiana courts have found 'fundamental error', the error involved the mistake or miscon-

---

**4.** Effective September 1, 1981, the state in a proceeding to enforce a statute defining an infraction need only prove by a preponderance of the evidence the commission of the infraction. Ind.Code § 34–4–32–1(d) (1981).

duct of the trial judge in the exercise of his own affirmative duties, whether the duty was to conduct the trial fairly without prejudice to either side (*see Wilson v. State, supra* [222 Ind. 63, 51 N.E.2d 848]), insure that formal waivers of constitutional rights were valid (*see Ford v. State, supra* [248 Ind. 438, 229 N.E.2d 634], *Branan v. State, supra* [Ind.App., 316 N.E.2d 406]), properly sentence the defendant according to law (*see Young v. State, supra* [249 Ind. 286, 231 N.E.2d 797]), or insure that the trial did not become a mockery of justice (*see Wilson v. State, supra*). In all these cases, the trial judge erred in performing some duty which the law had charged him to perform *sua sponte.* Presumably a trial judge is aware of his own *sua sponte* duties. Thus the necessity of informing him of dereliction in such duties, and the likelihood that he would properly perform such a duty merely because defense counsel informed him of it, is slight. Therefore, in the case of error by a trial judge in his *sua sponte* obligations, the policy requiring timely and specific objection, see 1 Wigmore, *supra,* § 18 (3d Ed. 1940), is not as significant a factor weighing against invocation of the 'fundamental error' doctrine as in matters wherein the parties necessarily shoulder the burden of pointing out error." (Footnotes omitted.)

Furthermore, our supreme court has stated,

"Fundamental error is error that, if not rectified, would deny a defendant fundamental due process. *Johnson v. State,* (1979) Ind., 390 N.E. 1005. It is not enough, in order to invoke this doctrine, to urge that a constitutional right is implicated. Only when the record reveals clearly blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied, will this Court review an issue not properly raised and preserved. *Nelson v. State,* (1980) Ind. 409 N.E.2d 637."

*Warriner v. State,* (1982) Ind., 435 N.E.2d 562, 563.

The defendant in *Moon v. State,* (1977) 267 Ind. 27, 28–29, 366 N.E.2d 1168, 1168–69, pursuant to a plea agreement, had pleaded guilty to armed kidnapping. After he was sentenced, he appealed seeking credit against this sentence for time spent in prison on a sentence for a separate conviction which he was serving at the time of the crime to which he pleaded guilty. The Supreme Court of Indiana observed, however, that no such crime as armed kidnapping was possible under Indiana's statutory scheme. Stating that conviction of a nonexistent crime constitutes fundamental error which cannot be ignored by the reviewing court if the error is apparent on the face of the record, the court vacated the conviction. *Accord Young v. State,* (1967) 249 Ind. 286, 289–91, 231 N.E.2d 797, 799 (no such crime as assault and battery with intent to commit manslaughter).

In *Swinehart v. State,* (1978) Ind.App., 372 N.E.2d 1244, the defendant was convicted of three offenses, second degree burglary, auto banditry, and safe burglary, and was sentenced on each conviction. Although the defendant did not raise the matter as an issue on appeal, this court noticed that, because all three charges arose from a single transaction, the second degree burglary and automobile banditry merged into the safe burglary, which was the offense which carried the greatest penalty. Stating that the imposition of an erroneous sentence is fundamental error, the court remanded the cause to the trial court with orders to vacate the judgments and sentences for second degree burglary and automobile banditry and to correct the commitment order accordingly.

The reasonable doubt standard is constitutionally mandated. In the case of *In re Winship,* (1970) 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 the Supreme Court of the United States said, "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

Although not every violation of a constitutional right necessarily gives rise to a

fundamental error, *Warriner v. State*, the significance of the error in the case at bar is readily apparent. A conviction based upon facts which fail to touch a material element of the offense charged clearly rendered any other efforts to provide Meredith with a fair trial meaningless. *Winston v. State.* Further, this kind of error is one which, particularly in a bench trial, involves an affirmative duty of the trial court as trier of fact. *Id.* Surely, if a conviction of a non-existent crime, *Moon; Young,* and if conviction and sentencing for merged offenses constitute fundamental error, then conviction of an offense where evidence and reasonable inferences of a material element of the offense are totally lacking must be in the same category. Meredith has been denied fundamental due process of law. *Warriner v. State.*

Inasmuch as this fundamental error is apparent on the face of the record, we are compelled to reverse Meredith's convictions *sua sponte*, although the issues he raises on appeal do not involve this error. *Moon; Young; Swinehart.* Accordingly, we remand the five causes of action to the trial court with orders to vacate the convictions, fines, and imposition of costs.

Reversed and remanded.

ROBERTSON, J., and SHIELDS, J. (by designation), concur.