**Verlin SHIELDS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1–783A239.

Court of Appeals of Indiana, First District.

Dec. 7, 1983.

Rehearing Denied Jan. 10, 1984.

---

1034

Mary M. Runnells, Bloomfield, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Appellant, Verlin Shields, (Shields) appeals the decision of the Green Circuit Court finding him guilty of Burglary, a Class C felony, in violation of IND.CODE 35–43–2–1.

We affirm.

On March 30, 1982, at approximately 11:40 p.m., Diana Ellett (Ellett) was awakened by a crash outside her apartment in Linton, Indiana. She looked outside the window and saw a man standing in the doorway of the Illingworth Pharmacy, located across the alley. She saw· the man break the glass window, reach inside, and open the door.

Upon seeing the man enter the building, she called the police. Police officers, David Gaither and Jesse Martin arrived and tried unsuccessfully to persuade the man to leave the building. The police then entered the building and subdued Shields with a blow to the head.

Shields was first charged on March 31, 1982, with Burglary, a Class C felony, and Resisting Law Enforcement, a Class A mis-

demeanor. Shields filed a motion for speedy trial on July 12, 1982, and trial was set for September 13, 1982. On September 10, 1982, the State filed a motion to dismiss the charges and the cause was dismissed.

Then on November 10, 1982, Shields was again charged with the same two counts arising from the same incident. On November 19, 1982, Shields filed a motion to dismiss along with supporting memorandum. The court denied the motion and trial was held on January 11, 1983. The trial resulted in verdicts of guilty as to Count I, Burglary and not guilty as to Count II, Resisting Law Enforcement.

On appeal, Shields presents several issues for review, the first of which is that the trial court erroneously overruled his motion for discharge because of violation of his right to speedy trial under Rule 4(B) of the Indiana Rules of Criminal Procedure.

■ The right to a speedy trial is rooted in the Indiana Constitution and our Criminal Rule 4 is the implementation of that right. Ind. Const. Art. 1, Sec. 12. The value of this right to an accused is basically three-fold. First, it sets a limit to the length of time a defendant may be held by recognizance. Secondly, it insures a hearing while the incident is fresh in the minds of witnesses and before they become unavailable to testify. Thirdly, it insures that an accused after a nolle prosequi, does not have to labor an undue length of time under the threat of a renewed prosecution for the same offense. *Johnson v. State,* (1969) 252 Ind. 79, 246 N.E.2d 181. While intended to implement the right to speedy trial, C.R. 4 is not itself a constitutional guarantee. *Collins v. State,* (1975) 163 Ind.App. 72, 321 N.E.2d 868. Its violation is, therefore, not a question of fundamental error.

C.R. 4(B) requires that the defendant be tried within seventy days from the date of the motion for speedy trial. Shields's motion for speedy trial was made on July 12, 1982. The seventy day limit expired on September 20, 1982. Shields did not go to trial until January 11, 1983. He argues that the trial court should have dismissed

the case for violation of C.R. 4(B). He cites *State ex rel. Hasch v. Johnson Circuit Court,* (1955) 234 Ind. 429, 127 N.E.2d 600 and *Johnson v. State, supra* in support of his argument.

◼ These cases stand for the proposition that when the State dismisses and refiles identical charges, it is chargeable with the consequences of the speedy trial statute relating back to the time of the original charge. However, it does not follow that every dismissal results in a per se violation of speedy trial rights. *Maxey v. State,* (1976) 265 Ind. 244, 353 N.E.2d 457. Also, these cases differ from the case at bar in that they involve the predecessor to C.R. 4, *Burns Ann.St.* § 9–1403. More importantly, both of these cases are concerned with how long an accused can be held on recognizance prior to trial, as opposed to a time period within which an accused must be tried after the filing of a speedy trial motion.

More on point are the cases of *Parks v. State,* (1979) 270 Ind. 689, 389 N.E.2d 286, and *Cody v. State,* (1972) 259 Ind. 570, 290 N.E.2d 38 *cert. den.* 416 U.S. 960, 94 S.Ct. 1978, 40 L.Ed.2d 311. These cases provide that when a motion for speedy trial has been made and the trial court has acted on that motion by setting a trial date, the motion is deemed to have served its purpose and a defendant must file a second motion to invoke his right under the speedy trial statute. Another pertinent case is *Johnson v. State,* (1976) 265 Ind. 470, 355 N.E.2d 240, *cert. den.* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 593, in which our supreme court held that where the defendant's first trial resulted in a hung jury, he was required to file a new motion for speedy trial. Furthermore, the time limitation for the holding of the second trial ran from the date on which the renewed motion was filed.

◼ In the case before us, Shields moved for a speedy trial on July 12, 1982. The trial court set a trial date for September 13, 1982, thus, acting on the speedy trial motion. The motion had served its purpose and the trial court could do no more. It follows that when the same charges were refiled, a whole new action began and Shields was required to file a new motion for speedy trial.

We do not think that this requirement saddles the defendant with any great burden. In fact, we do not feel that in cases such as this, it can automatically be presumed that the defendant will always want to invoke the rule's provisions. *See, Johnson v. State, supra.* Thus, the trial court did not err in denying Shields's motion for discharge as there was no violation of C.R. 4.

The next issue is whether it was reversible error to exclude certain evidence concerning Shields's behavior while intoxicated as well as evidence of an injunction prohibiting State's witness, Officer Martin, from performing functions of a regular police officer.

In regard to the first alleged error, the record shows the following exchange upon direct examination of Martha Earle:

Q. Have you observed your son on past occasions when he had had anything to drink?

A. Yes I have.

Q. You are aware of how he acts when he has been drinking?

A. Yes.

Q. Based on that past experience you have had in observing your son were you able to tell the next morning in the hospital how much he might have had to drink by the way he acted?

BY JOSEPH A. SULLIVAN, PROSECUTING ATTORNEY: To which I am going to object again Judge.

BY THE COURT: That question calls for a yes or no answer. You may answer. It is a yes or no question.

A. No.

◼ The above testimony shows that Martha Earle was aware of her son's drinking problem. It also shows that based upon her past observations, she was unable to make any kind of judgment about how much alcohol her son had consumed on the night in question. Therefore, her testimo-

ny, concerning his behavior on other occasions would have been totally unrelated to his guilt or innocence for the crime charged. We do not think that the trial court abused its discretion in excluding this evidence.

Furthermore, Shields admits in his brief that later during the trial, he was able to introduce evidence concerning past occasions when he had passed out from intoxication. Consequently, any error committed by the trial court would have been harmless, in light of the entire record. *See, Murray v. State,* (1982) Ind., 442 N.E.2d 1012.

Shields also contends that the trial court committed reversible error when it refused to allow evidence of a permanent injunction prohibiting Officer Martin from performing duties as a regular member of the Linton Police Department. Shields argues that since the intoxication issue was important, he should have been given the opportunity to show the jury that Martin was acting in violation of a court order.

The scope and extent of cross-examination is largely within the trial court's discretion and the trial court possesses wide latitude in permitting cross-examination to test the credibility of a witness. *Schalkle v. State,* (1979) 272 Ind. 134, 396 N.E.2d 384. Only a clear abuse of discretion demands reversal. *Blue v. State,* (1946) 224 Ind. 394, 67 N.E.2d 377.

The general rule is that a witness may not be impeached by proof of specific acts of misconduct or immorality. *Polson v. State,* (1965) 246 Ind. 674, 207 N.E.2d 638; *Wells v. State,* (1979) Ind.App., 397 N.E.2d 1250. More specifically, our supreme court has held it proper for a trial court to prohibit, by means of motions in limine, any reference to a pending investigation of misconduct on the part of police officers testifying for the State. *Banks v. State,* (1976) 265 Ind. 71, 351 N.E.2d 4, *cert. den.* 429 U.S. 1077, 97 S.Ct. 821, 50 L.Ed.2d 797. Consequently, we find no abuse of the trial court's discretion in this regard.

Shields now argues that there is insufficient evidence as to the requisite intent. The function of this court in reviewing the sufficiency of the evidence is clearly established. We look only to the evidence most favorable to the verdict and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. *Baum v. State,* (1976) 264 Ind. 421, 345 N.E.2d 831. We will not weigh the evidence nor will we judge the credibility of the witnesses. *Rosell v. State,* (1976) 265 Ind. 173, 352 N.E.2d 750.

In order for Shields to be relieved from responsibility for the crime charged by reason of intoxication, he must be so intoxicated as to be incapable of entering the required specific intent. *Roberson v. State,* (1982) Ind., 430 N.E.2d 1173. The degree of intoxication is a question of fact, and the burden of proving intoxication is on the defendant. *Bates v. State,* (1980) Ind., 409 N.E.2d 623. It does not follow that a person is rendered incapable of forming intent merely because there is evidence showing that at the time of the crime the accused was intoxicated. *Booher v. State,* (1901) 156 Ind. 435, 60 N.E. 156; *Bates v. State, supra.* The general rule applied in cases such as this is that the drunkenness of the accused must be of such a degree as to deprive him of the powers to deliberate or form the necessary design or intent. *Id.*

The evidence shows that Shields had enough presence of mind to break a glass window, reach in and unlock the door, and enter the pharmacy. He also attempted to evade capture by hiding in a storage room and attacking one of the officers as they tried to arrest him. In addition, both Officer Martin and the owner of the pharmacy, who was called to the scene, testified that Shields did not smell of alcohol. This is sufficient evidence to reasonably conclude that Shields knowingly entered the pharmacy with the intent to commit a felony. Moreover, the jury was fully instructed on the intoxication defense. Thus, we affirm the judgment of the trial court in this regard.

Next Shields contends that the trial court erred in giving State's instruction No. 1. It reads as follows:

The intent to commit a felony, element of burglary, can be inferred from the time, force, and manner of entry, if there is no evidence that the entry was made with some lawful intent.

■■■■ The purpose of an instruction is to inform the jury of the law applicable to the facts in such a manner that the jurors will not be misled. *Smith v. State,* (1980) Ind.App., 403 N.E.2d 869. An instruction that is correct will not be found to be erroneous merely because it was not a fuller statement of the law. *Id.* Furthermore, error in a particular instruction will not justify reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Daniels v. State,* (1980) Ind., 408 N.E.2d 1244.

■■■■ Contrary to Shields's assertions, the challenged instruction was an accurate statement of the law. While the State must sustain its burden of proof on each element of an offense charged, some of these elements may be proven by circumstantial evidence. *Kondrup v. State,* (1968) 250 Ind. 320, 235 N.E.2d 703. Because intent is a mental state of the actor, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to reasonably infer its existence. *Lisenko v. State,* (1976) 265 Ind. 488, 355 N.E.2d 841; *Duncan v. State,* (1980) Ind., 409 N.E.2d 597.

Moreover, there was no undue emphasis placed upon this instruction as the jury was properly instructed to consider all the instructions before deciding the case. We find no error in the giving of State's instruction No. 1.

Lastly, Shields contends that he was denied a fair trial due to prosecutorial misconduct. He alleges that on two separate occasions, the prosecutor improperly referred to prior criminal conduct in direct violation of a motion in limine. In the first instance, the prosecutor asked a witness about Shields allegedly breaking into homes.

This first error was objected to during trial, but was not argued in the motion to correct errors. However, Shields maintains that this error is of such fundamental character that it should be considered by the court.

■■■■ It is clearly established that issues not raised in the motion to correct errors are waived. *May v. State,* (1976) 265 Ind. 25, 349 N.E.2d 171; *Meeker v. Robinson,* (1977) 175 Ind.App. 102, 370 N.E.2d 392. In this case, we do not find the prosecutor's conduct to be of such fundamental dimension to warrant an exception to the rule. Therefore, this error is waived.

Shields argues that the second error occurred during closing argument when the prosecutor commented that a prior burglary conviction was evidence of a pattern of misconduct. He maintains that this comment constituted a previous error and placed him in grave peril, so that the conviction should be set aside and a new trial granted.

■■■■ Shields alleges error during final argument, yet the final argument is not included in the transcript. It is always the defendant's duty to provide a proper record so that intelligent review of the issues may be made. Failure to do so waives error. *Cook v. Hahn,* (1980) Ind.App., 403 N.E.2d 834.

However, the transcript does show that Shields made a motion to correct the record. The trial judge overruled the motion stating that he had no specific recollection of the objection, ruling, or admonishment and therefore, that he could not amend the record to so reflect. Shields argues that the trial court should have conducted a hearing to settle the record. *See, Herrera v. Collection Service, Inc.,* (1982) Ind.App., 435 N.E.2d 88. But it seems that the trial judge would have been unable to settle the conflict. Consequently, we shall look to the alleged misconduct to determine if Shields was denied the right to a fair trial.

■■■■ The supreme court set forth the proper standard of review for alleged prosecutorial misconduct in *Maldonado v. State,*

(1976) 265 Ind. 492, 355 N.E.2d 843. The court must determine: 1) whether the act in issue is misconduct; and, 2) whether the act placed the defendant in a position of grave peril.

> "Certainly, '[i]t is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt.' *Maldonado, supra,* 265 Ind. at 500, 355 N.E.2d at 849. Those statements disapproved by the Supreme Court, however, invite the jury to consider factors other than guilt. *See, e.g., Maldonado, supra,* (statement implying that conviction of defendant would be community service); *Warner v. State,* (1976) 265 Ind. 262, 354 N.E.2d 178 (statement implying conviction of defendant would avert tyranny); *Clark v. State,* (1976) 264 Ind. 524, 348 N.E.2d 27, *cert. denied,* 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711 (statement that jury should disregard defense presented because it would set a 'precedent' which 'would be the end of criminal convictions')."

*Roberts v. State,* (1981) Ind.App., 419 N.E.2d 803, 809.

In the present case, it is difficult to determine the appropriateness of the statement since we have no record of it for review. Although the propriety of the prosecutor's reference to a prior conviction may be questioned, it does not appear that the prosecutor was asking the jury to convict Shields on the basis of a prior conviction.

Furthermore, this statement did not place Shields in a position of grave peril. The grave peril standard is determined by the probable persuasive effect of the misconduct, not the degree of impropriety of the conduct. *Maldonado, supra.* The prosecutor's statement was made during final argument after the presentation of all the evidence. We have already determined that sufficient evidence was presented to convict Shields. In light of the record as a whole, we find that the statement had minimal persuasive effect. Thus, we find that Shields was not denied a fair trial and thereby, affirm his conviction.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.