**Michael VAUGHAN,
Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 4–1083A347.**

Court of Appeals of Indiana,
Fourth District.

Nov. 8, 1984.

Rehearing Denied Feb. 6, 1985.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Appellant Michael Vaughan (Vaughan) appeals his jury convictions in the Tippecanoe Circuit Court for intimidation while armed with a deadly weapon in violation of IND. CODE 35–45–2–1(2) and theft in violation of IC 35–43–4–2.

Affirmed.

ISSUES

Vaughan's appeal presents seven issues for our review.[1]

1. Did the trial court err when it refused to grant Vaughan's motion to discharge based on his right to a speedy trial?

2. Did the trial court err in admitting State's exhibit "O" over Vaughan's objection based on improper showing of a chain of custody?

3. Did the trial court err in admitting Vaughan's signed statement over his objection it was not voluntarily given?

4. Did the trial court err in refusing Vaughan's tendered final instruction number 1?

5. Did the trial court err in giving State's tendered final instruction number 7?

6. Did the trial court err in giving State's tendered final instruction number 8?

7. Did the trial court err when it permitted State's use of a Bible quotation during closing argument?

FACTS

On the afternoon of October 11, 1981, Vaughan entered the hardware department of a Sears store in West Lafayette and asked a clerk, Anthony Sommer (Sommer), to show him a file. When Sommer asked Vaughan what kind of file he wanted, Vaughan took an eight-pointed martial arts star from his jacket. Sommer then showed Vaughan an appropriate file. Vaughan, however, returned it to Sommer saying he did not have enough money to buy it. Fif-

teen minutes later Sommer noticed Vaughan standing by the files again.

Later, Vaughan was in the men's department of the same store. Undercover security officer Martin Cunningham (Cunningham) watched Vaughan take a belt from one of the racks, put it on his pants, and pull his shirt down over it. Shortly thereafter Vaughan left the store. Cunningham approached Vaughan outside the store and asked to see a receipt for the belt. Vaughan admitted having no receipt, removed the belt, and gave it to Cunningham. Cunningham accompanied Vaughan back into the store and telephoned for assistance.

Later, as Vaughan attempted to leave the store, Cunningham and the store manager approached him. Vaughan then pulled a martial arts star from his pocket and made a threatening motion as if to throw it. Cunningham and the store manager took cover. Vaughan fled the store. Outside the store Linda Wright saw Vaughan remove a file from his jacket and hide it in the parking lot.

Vaughan was apprehended a short time later in the restroom of a nearby Noble Romans pizza parlor by West Lafayette police officer Michael Boesch (Boesch) and Cunningham. Vaughan had three martial arts stars in his possession at the time.

Boesch and Cunningham took Vaughan to the police station. There, he signed an acknowledgment of his *Miranda* rights but refused to sign a waiver of these rights. While officers were taking background information from him, Vaughan demanded the right to make a statement. The officers gave him a statement form and a pen and explained the form to him. It contained a written waiver of *Miranda* rights. Vaughan wrote and signed a statement, then gave it to the officers.

An information was filed against Vaughan on March 17, 1982. On July 26, Vaughan filed a motion for early trial. Trial was set for September 13th, but prior to

---

1. Vaughan's appeal originally included only six issues, but for clarity his issue number 2 has

been restated here as issues numbered 2 and 3.

September 1st, Vaughan's attorney contacted the prosecutor informing him Vaughan would accept a plea agreement the State had offered. The prosecutor delivered written copies of the plea agreement to Vaughan's attorney the same day. Trial was not held as scheduled on September 13. Vaughan never signed the plea agreement. On October 26 he filed a motion for discharge. Vaughan's motion was overruled, and trial commenced on March 23, 1983.

DISCUSSION AND DECISION

### I. Speedy Trial

Vaughan first contends the court erred by not discharging him pursuant to Criminal Rule 4 because he was not brought to trial within the 70 day limit established therein. We disagree.

Because of Vaughan's motion for early trial, the court set the case for trial on September 13, 1982, well within the 70 day limit. Trial was neither held on that date nor rescheduled prior to Vaughan's motion for discharge on October 26, 1982.

The State argues the trial was delayed because Vaughan's attorney said he would accept the prosecutor's plea agreement, the attorney's act must be imputed to Vaughan, and thus, the court did not err by refusing to discharge Vaughan. We agree.

Criminal Rule 4(B), upon which Vaughan relies for his discharge, states in pertinent part:

(B)(1) Defendant in jail—Motion for early trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last—mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance

as set forth in subdivision (A) of this rule.

■ Under C.R. 4, any delays caused by the defendant's act extends the time limitation by the length of such delays. *Webb v. State*, (1983) Ind., 453 N.E.2d 180, 186; *Andrews v. State*, (1982) Ind., 441 N.E.2d 194, 199; *State v. Tomes*, (1984) Ind.App., 466 N.E.2d 66, 68. Vaughan argues, however, he was not informed of the plea agreement by his attorney. Thus the delay, if any, caused by the plea agreement is not chargeable to him: negotiating a plea agreement is actually consistent with his desire for a speedy trial and there was not cause for delay of the trial, he opines.

■ We find no merit in Vaughan's contention the actions were those of his attorney and not himself. When assessing responsibility for delay we are required to view the acts of an attorney as the acts of his client. *Andrews, supra*, 441 N.E.2d at 199; *see also Dean v. State*, (1982) Ind., 433 N.E.2d 1172.

■ Even if his attorney's acts during plea negotiations are attributable to him in determining time limitations under C.R. 4, Vaughan argues, such negotiations are not per se inconsistent with his desire for a speedy trial. However, in *Mickens v. State*, (1982) Ind., 439 N.E.2d 591, 595, our supreme court held the defendant abandoned his speedy trial motion for the period in which he pursued plea negotiations. Vaughan posits plea negotiations can, in fact, be conducive to a speedy trial, and whether plea negotiations are a delay tolling the time limitations of C.R. 4 should be decided on a case-by-case basis. We adhere to *Mickens* and decline to judicially engraft case-by-case review.

■ Further, Vaughan was not only involved with plea *negotiations* with the State, he had said he would accept a plea *agreement*. Thus, any delay resulting from the State's preparation of the plea agreement and Vaughan's subsequent withdrawal from the agreement is attributable to him. His right to a speedy trial was not violated.

## II. Chain of Custody

Vaughan next contends the court erred by introducing exhibit "O" without showing a proper chain of custody. We disagree.

■ Exhibit "O" consisted of three martial arts throwing stars. Prior to introduction of these stars, officer Boesch identified the stars as ones he removed from Vaughan's jacket pocket. Additionally, Martin Cunningham and officer William Davis also testified the stars were the ones they saw Boesch remove from Vaughan's jacket. Although a chain of possession must be established to avoid any claim of substitution, tampering, or mistake, *Graham v. State*, (1970) 253 Ind. 525, 530, 255 N.E.2d 652, 656, the martial arts stars were hard physical evidence whose characteristics were capable of eyewitness identification, unlike the fungible narcotics involved in *Graham*. It is a sufficient foundation for the introduction of such items into evidence that a witness identifies the items and they are relevant to the issues of the case. *Woodard v. State*, (1977) 267 Ind. 19, 24, 366 N.E.2d 1160, 1164; *Owens v. State*, (1975) 263 Ind. 487, 504, 333 N.E.2d 745, 754.

## III. Voluntariness of Statement

Vaughan's written statement was not voluntarily given, he opines, and its admission at trial was therefore reversible error. Although proper objection was made at trial, this objection was neither preserved in Vaughan's motion to correct errors nor was it listed as an issue on appeal. The State argues it is therefore waived. We agree.

■ Vaughan contends even though a different theory was used for objection at trial than was preserved in his motion to correct errors, no strategic waiver of this issue was made. However, it is clear a defendant waives alleged error if he asserts one theory of error in support of an objection at trial, and an entirely different theory of error in support of the same objection in his motion to correct errors.

*Guardiola v. State*, (1978) 268 Ind. 404, 405, 375 N.E.2d 1105, 1107; Ind. Rules of Procedure, Trial Rule 59.

## IV. Vaughan's Final Instruction

Vaughan next contends the trial court erred by refusing to submit his final instruction 1 to the jury. As noted by the State and conceded by Vaughan, however, Vaughan's tendered instruction was neither signed nor numbered as required by IC 35–37–2–2(6).

■ No claim of error can be predicated on failure to give an instruction which is not both signed and numbered. Failure to sign and number an instruction waives any error with regard to refusal to give it. *Harding v. State*, (1984) Ind., 457 N.E.2d 1098, 1108; *Askew v. State*, (1982) Ind., 439 N.E.2d 1350, 1353; *Dougherty v. State*, (1983) Ind.App., 451 N.E.2d 382, 386.

■ Vaughan contends *Harding* cannot be relied upon because it did not deal with the application of Criminal Rule 8 which, Vaughan opines, obviates the need for signing of the instructions. We disagree. As the State correctly contends, Criminal Rule 8(D) states the requirements necessary to preserve an instruction for review on appeal. It has no bearing upon whether an instruction will be given at trial. Thus C.R. 8 does not obviate the requirements of IC 35–37–2–2(6).

## V. State's Final Instruction Number 7

Vaughan contends the trial court committed reversible error by giving State's tendered instruction number 7. Specifically, Vaughan argues the wording of the instruction is misleading and confusing.

As tendered by the State, the instruction states:

> The intent with which an act is done is a mental process and as such often remains hidden within the mind, and may not be capable of proof by direct evidence but may be inferred from outward manifestations or words or acts of the party, or other acts and circumstances surrounding the transaction.

As Vaughan notes, the exact wording of this instruction was approved by this district in *Simmons v. State*, (1983) Ind.App., 455 N.E.2d 1143, 1146 where we described the language as "clear". It is Vaughan's position, however, we were addressing there only the question of whether the burden of proof was unreasonably shifted by such instruction. Here Vaughan is challenging the instruction solely on the grounds the words "outward manifestations or words or acts of the party" are misleading.

 Vaughan fails to make any argument as to how these words are misleading or how he was harmed thereby. Further, he fails to offer any authority to support this contention. This issue is, therefore, waived. *Gajdos v. State*, (1984) Ind., 462 N.E.2d 1017, 1021; *Ruth v. State*, (1984) Ind.App., 462 N.E.2d 269, 272; Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

### VI. State's Final Instruction Number 8

Vaughan next contends the trial court erred by giving the State's final instruction number 8 as it incorrectly states the law. We disagree.

 The State's tendered final instruction number 8 states:

You are instructed that where an information alleges more than one act which is connected by the word "and" that the burden in (sic) on the State of Indiana to prove either of the acts alleged.

Citing *Jacks v. State*, (1979) 271 Ind. 611, 394 N.E.2d 166, Vaughan argues the mere fact certain language or statements are used by our supreme court to reach its decision does not make that language proper for use in instructions to a jury. While that contention might have merit in other contexts, the instruction, as given, is a correct statement of law in Indiana. *Booker v. State*, (1979) 270 Ind. 498, 502, 386 N.E.2d 1198, 1201; *LaMar v. State*, (1953) 231 Ind. 508, 511, 109 N.E.2d 614, 615.

### VII. State's Closing Argument

Finally, Vaughan contends the trial court erred by permitting the State to include a quote from the Bible in its closing argument. We disagree.

 When conduct of a prosecutor during closing argument is challenged, we will consider whether such conduct, under all the circumstances, places the defendant in a position of grave peril to which he should not have been subjected. *Burris v. State*, (1984) Ind., 465 N.E.2d 171, 186; *Shields v. State*, (1983) Ind.App., 456 N.E.2d 1033, 1040. The grave peril standard is determined by the probable persuasive effect of the misconduct. *Maldonado v. State*, (1976) 265 Ind. 492, 500, 355 N.E.2d 843, 849; *Shields*, 456 N.E.2d at 1040.

 During closing arguments, when discussing inferences to be drawn from Vaughan's flight, the prosecutor quoted Proverbs 28:1

"The wicked flee when no one pursues, but the righteous are bold as a lion."

Even assuming, *arguendo*, the closing argument constituted prosecutorial misconduct, Vaughan makes no showing he was put in a position of grave peril. Vaughan contends the State was trying to infer divine providence was on the State's side, the quotation was an attack on Vaughan's character, and the use of the Bible was an appeal to the sympathy and prejudices of the jurors. In view of the context in which it was presented, and the nature of the quotation, we find its use would have little or no probable persuasive effect.

Affirmed.

MILLER, P.J., concurs.

YOUNG, J., dissents in part with opinion.

YOUNG, Judge, dissenting in part.

I dissent in part and concur in part. I dissent from Vaughan's conviction of intimidation while armed. There is no evidence of intimidation. Vaughan may have committed attempted battery but there is nothing in the record that he communicated any threat to force anyone to do or refrain

from doing anything. This is fundamental error which should require reversal of that count. *Meredith v. State*, (1982) Ind.App., 439 N.E.2d 204.

As to theft, I concur with the majority.